STEPHEN WOLFBERG vs. WILLIAM HUNTER & another.

Suffolk. November 2, 1981. — March 2, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Emotional Distress. Consumer Protection Act. Damages,* Consumer
protection case, Breach of implied warranty of habitability. *Landlord
and Tenant,* Habitability, Rent.

Tenants seeking damages at common law from their landlord for emo-
tional distress caused principally by an infestation of mice in their
apartment failed to demonstrate that the judge was clearly wrong in
not concluding either that the landlord intended to inflict emotional
distress or that such distress resulted from reckless conduct. [394-396]
General Laws c. 93A, § 9 (1), as in effect at the times relevant to a claim
by tenants against their landlord, afforded no recovery for emotional
distress resulting from a violation of regulations promulgated by the
Attorney General pursuant to G. L. c. 93A. [396-397]
Where tenants prevailed on a claim against their landlord under G. L.
c. 93A, damages were to be calculated by initially determining an
amount equal to the agreed rent of the rental unit in question, minus
the value of the rental unit in a defective condition, plus any reason-
able expenses incurred by the tenants as a result of the defective condi-
tion; this amount was to be doubled or trebled if appropriate pursuant
to findings by the judge in accordance with G. L. c. 93A, § 9 (3); and
finally the total amount of the recovery as so determined was to be re-
duced by the amount of any rent withheld by the tenants under G. L.
c. 239, § 8A, or under the common law. [397-400]
Where tenants were awarded damages in excess of three months' rent and
their actual expenses on a claim against their landlord under G. L.
c. 93A, based on the same facts as a concurrently asserted claim for
violation of G. L. c. 186, § 14, recovery of damages under c. 186,
§ 14, was duplicative, and thus was not allowed. [400-401]

CIVIL ACTION commenced in the Boston Municipal Court
Department on December 6, 1978.

On transfer to the Boston Division of the Housing Court
Department the case was heard by *King,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*William A. Hunter* for the defendants.

*M. Robert Dushman* for the plaintiff.

LYNCH, J.  In November, 1978, William and Jill Hunter (tenants) notified Stephen Wolfberg (landlord) of their decision to withhold rent, pursuant to G. L. c. 239, § 8A, because of the landlord's failure to remedy certain defects in their apartment, principally an infestation of rodents.  The landlord commenced a summary process action for nonpayment of rent, which was transferred to the Boston Housing Court. The judge entered judgment against the landlord on his claim for possession of the premises, and in favor of the tenants on their counterclaims of damages for retaliatory eviction in violation of G. L. c. 186, § 18 (reprisal against tenant for union activities), breach of the common law warranty of habitability, intentional interference with quiet enjoyment in violation of G. L. c. 186, § 14, and three of their claims of violations of G. L. c. 93A, § 2: those relating to rodent infestation, improper trash disposal, and retaliatory eviction.  The judge denied the tenants' claims for damages for infliction of emotional distress.  All parties appealed.[1]

The landlord later filed a motion to amend the judgment and for a new trial; the tenants filed a motion seeking, primarily, reconsideration of their emotional distress claim. The judge granted the landlord's motion to reduce the amount of damages awarded to the tenants on their G. L. c. 93A claim for failure to remedy the rodent infestation and inadequate trash disposal. He ruled that damages should be calculated by adding to the tenants' out-of-pocket expenses the difference between the fair rental value of the

---

[1] The judge also denied the tenants' claims of five other violations of G. L. c. 93A.  The tenants' appeal encompassed the judge's denial of these claims.  On appeal, the tenants apparently neither briefed nor argued the issues relating to these claims, which we deem waived.  Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

apartment they occupied and the amount they paid in rent. Since the tenants withheld rent for the three-month period at issue,[2] the judge ruled that they were not entitled to recover damages under G. L. c. 93A (other than their out-of-pocket expenses) for the conditions that prevailed in their apartment during those months. All parties appealed from the amended judgment. The parties made further motions; the judge allowed only a motion to correct a clerical error in the judgment.

The tenants subsequently moved for an award of additional attorney's fees. A judge of the Boston Housing Court awarded the tenants' attorney $400 in fees for his services as appellate counsel. The tenants filed a notice of appeal from that order. The landlord, however, withdrew his notice of appeal, and only the tenants' appeal is now before this court.[3]

On appeal, the tenants claim that the judge erred in failing to find the landlord liable for infliction of emotional distress (under both the common law and G. L. c. 93A),[4] and that the judge improperly limited the damages recoverable under G. L. c. 93A for rodent infestation, during the period

---

[2] November and December of 1978 and January of 1979.

[3] The tenants have neither briefed nor argued the issue of attorney's fees. We therefore do not reach this issue. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). *Mahoney* v. *Board of Appeals of Winchester*, 366 Mass. 228, 233 (1974), appeal dismissed, 420 U.S. 903 (1975).

[4] The tenants did not raise, either in their pretrial pleadings or in the proceedings before the trial judge, the issue whether the landlord could be held liable for negligent infliction of emotional distress. They adverted to that possibility, for the first time, in a motion for reconsideration filed (presumably under Mass. R. Civ. P. 60, 365 Mass. 828 [1974]) after entry of judgment. The judge denied the motion, as he had discretion to do. *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Administration & Fin.*, 369 Mass. 562, 565 (1976), and cases cited. The tenants do not assert, and we do not find, an abuse of discretion. We therefore need not, and do not, determine whether recovery for emotional distress under a negligence theory would be permitted here. See *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 8 (1981), and cases cited; *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Administration & Fin., supra.*

that the tenants withheld rent, to expenses actually incurred by the tenants in their attempts to remedy that condition. We affirm the judge's decision that the landlord is not liable for infliction of emotional distress. We reverse the judgment and remand the case for entry of an amended judgment on the issue of damages.

1. *Facts*. The landlord is the owner of a four unit apartment building located in the South End section of Boston. The tenants' lease ran from July, 1976, until March, 1979, when they vacated. The tenants paid their rent ($330 per month during the months at issue) in a timely manner until November, 1978, when they began to withhold rent pending the landlord's correction of State Sanitary Code violations.

In mid-September, 1978, the tenants first spoke to their landlord concerning a problem with mice in their apartment. The landlord told them to purchase a commercially available rodent poison and to deduct the cost from their rent. They purchased and used such a poison, but the problem nonetheless worsened over the next few weeks. The landlord, despite the tenants' requests, did not agree to hire a professional exterminator until late October. The professional exterminator attempted a total of four times between October, 1978, and January, 1979, to rid the tenants' apartment of mice. The rodent problem inside their apartment was not alleviated, however, until the landlord caulked certain holes in the foundation of the building, and until Hunter filled holes in the walls of the apartment with steel wool.

The landlord did not, as the tenants suggested, hire an exterminator to identify the holes in the foundation and in the apartment walls through which the rodents were gaining access, nor did he respond immediately to their request that he block those holes. The landlord did, however, block the holes in the foundation within two weeks of the tenants' request. With respect to the holes in the tenants' apartment walls, the tenants and the landlord came to no agreement. The tenants were dissatisfied with the landlord's suggestion that either he or his maintenance man come to the apartment and block the holes. As a result, Hunter blocked most

of the holes himself early in November. The remaining holes were blocked in January, 1979, when the landlord had his plumber remove the tenants' dishwasher to make these holes accessible.

On or about November 10, 1978, the tenants posted notices in their building and in three nearby buildings, also owned by the landlord, soliciting information about other tenants' problems with living conditions in those buildings (including rodent infestation), and proposing the formation of a tenants' union. The next day, the tenants informed the landlord that they were withholding their rent because of the rodent problems. The landlord responded by stating that he would serve the tenants with a fourteen-day notice to quit and let a court decide whether the tenants were justified in withholding rent.

On November 8, 1978, the tenants reported State Sanitary Code violations in their building to the housing inspection department of the city of Boston. A subsequent inspection revealed several violations relating to rodents and rubbish. By the time of trial, on January 29, and February 5, 1979, the conditions involving rubbish disposal had improved and the tenants no longer saw evidence of rodents in their apartment, although rodents could still be heard on occasion inside the apartment's walls and ceilings.

2. *Recovery at common law for infliction of emotional distress.* The tenants argue that the trial judge erred in finding that the evidence would not support a conclusion that the landlord knew or should have known that severe emotional distress was the likely result of his conduct,[5] and that therefore they should be permitted to recover for the common law tort of intentional or reckless infliction of emotional distress. They rely primarily on the language of *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976), where the court stated that, "in order . . . to prevail in a case for liability under this tort . . . [i]t must be shown

---

[5] The tenants do not contend that the landlord's conduct could be characterized as intentional.

(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . . ." (citing Restatement [Second] of Torts § 46, Comment i [1965]). The tenants claim that the landlord knew that his failure immediately to accept and act upon the tenants' suggestions regarding the appropriate means of stemming the rodent invasion would cause Mrs. Hunter severe emotional distress.

The evidence introduced in this case clearly supports the judge's finding that the landlord was not reckless under the "knew or should have known" standard enunciated in *Agis*. Within a week of first learning that Mrs. Hunter was becoming very upset as a result of the rodent infestation, the landlord had the premises visited a second time by a professional exterminator. Within that same week, the landlord learned that the holes in the tenants' apartment walls had been blocked. Within three weeks, and before he learned of the Boston housing inspector's discovery of State Sanitary Code violations involving the holes in the foundation, the landlord blocked those holes (albeit with steel wool, a substance which, according to the housing inspector, did not meet the code's standards for materials to be used in masonry repair).[6]

The tenants have failed, therefore, to demonstrate that the judge was clearly wrong in finding that there was insufficient evidence that the landlord intended to inflict emotional distress or that such distress resulted from reckless conduct. The landlord's conduct toward the tenants was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

[6] The landlord testified that he did not move more quickly to block the holes in the foundation because he believed that, since the residents of the apartment below the tenants had no rodent problems, the rodents infesting the tenants' apartment were gaining access, not through the foundation, but through holes in the walls of an adjoining row house. He also testified that, when he filled the holes in the foundation, he discovered that they "went in only an inch." The landlord stated that, in his opinion, no mice could have entered through those holes.

community." Restatement (Second) of Torts, *supra* at Comment d. Compare the facts of this case with those of *Boyle* v. *Wenk,* 378 Mass. 592 (1979); *Agis* v. *Howard Johnson Co., supra; George* v. *Jordan Marsh Co.,* 359 Mass. 244 (1971).

3. *Recovery for infliction of emotional distress under G. L. c. 93A, § 9.* The tenants argue that the judge erred in denying them damages for emotional distress in connection with their G. L. c. 93A claim involving rodent infestation. The judge held that the landlord had violated Regulation XVI A 9, 20 Code Mass. Regs., Part 5, at 44 (1975), promulgated by the Attorney General of the Commonwealth pursuant to G. L. c. 93A. He held further, however, that G. L. c. 93A created no right in the tenants to recover damages for emotional distress suffered as a result of this violation.

General Laws c. 93A, § 9 (1), as amended through St. 1978, c. 478, § 45, which was in effect on the date of entry of both the original and amended judgments in this case,[7] reads in pertinent part: "Any person who . . . leases . . . property, real or personal primarily for personal, family or household purposes and thereby *suffers any loss of money or property,* real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful [by this chapter or regulations promulgated thereunder] may . . . bring an action [to recover damages and obtain equitable relief]." (Emphasis supplied.) In *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 45 (1975), this court stated that, "in § 9 (1) 'money' means money, not time, and . . . 'property' means the kind of property that is purchased or leased, not such intangibles as a right to a sense of security [or] to peace of mind . . . ." We agree with the judge that the phrase "loss of money or property" constitutes a limitation on the types of injuries for which recovery may be had under G. L. c. 93A, § 9 (1), as that statute existed at the times relevant to this suit. Since

---

[7] General Laws c. 93A, § 9 (1), has since been amended several times, most recently by St. 1979, c. 406, § 1.

the tenants' claim of damages for emotional distress involves neither a loss of money nor of property, they cannot recover on that claim under the statute.[8]

4. *Calculation of damages under G. L. c. 93A.* In the judge's initial order, he calculated the damages suffered by the tenants with respect to their G. L. c. 93A counterclaim involving rodent infestation as the difference between the rental value of the apartment as warranted during each of the five months in question ($330 per month for a total of $1,650), and the value of the apartment in a defective condition during each of those months (a total of $525),[9] plus the expenses incurred by the tenants in their efforts to remedy the defective condition.[10] After finding that the landlord's response to the tenants' G. L. c. 93A demand letter was not made in good faith, see G. L. c. 93A, § 9 (3), the judge awarded the tenants two times their actual damages, or $2,640 on their counterclaim.

In response to the landlord's motion to amend the judgment, the judge recalculated the award of damages. He determined that the tenants were not entitled to any award of damages for the months during which they withheld rent because the tenants had not suffered any "loss of money or

---

[8] General Laws c. 93A, § 9 (1), as amended by St. 1979, c. 406, § 1, reads: "Any person . . . *who has been injured* by another person's use or employment of any method, act or practice declared to be unlawful [by this chapter, regulations promulgated thereunder, or by G. L. c. 176D, § 3 (9)] may bring an action in the superior court . . . [to recover damages and obtain equitable relief]." (Emphasis supplied.) Since this amendment did not become effective until after the entry of the amended judgment, we need not decide whether the Legislature intended to permit recovery for emotional distress under this version of the statute.

[9] The judge found the fair rental value of the apartment, with defects, to be: September, 1978 — $200; October, 1978 — $50; November, 1978 — $25; December, 1978 — $50; and January, 1979 — $200.

[10] The judge found that the tenants' expenses included the amounts they spent on extermination and on materials to block the holes in their apartment walls ($100) plus the fair value of Hunter's time spent in blocking those holes, as established by a settlement offer ($95). The issue whether the labor expended by Hunter constituted a "loss of money or property" was not raised or argued, and we do not reach it.

property, real or personal" during those months. G. L. c. 93A, § 9 (1). The method of calculating damages adopted by the judge in his amended judgment resulted in a diminished recovery for the tenants. Their actual damages were $130 in September, 1978 ($330, the rental value as warranted, minus $200, the fair rental value with defects), and $280 in October, 1978 ($330 minus $50), for a total of $410. Under this calculation, the tenants occupied their apartment rent free during the months of November and December, 1978, and January, 1979, but were given no additional credit for its defective condition in the calculation of damages under G. L. c. 93A. The judge entered an amended judgment in the tenants' favor for $1,190; $410 for the defective condition, plus $195 in out-of-pocket expenses, doubled.[11]

We believe that the judge erred in thus resolving the issues raised by the plaintiff's claim for damages. There has been a substantial interference with the use and enjoyment of the apartment to which the tenants were entitled under their lease. This interference with a right guaranteed to them under their lease constitutes a loss of property to the tenants. They had a contractual right to enjoy the use of the apartment free of rodents. The judge found that the tenants withheld rent justifiably. Thus they were deprived of their contractual right by the landlord's conduct.

More importantly, the resolution of the damages issue reached by the judge conflicts with the public policy, set forth in G. L. c. 239, § 8A, of allowing tenants to withhold rent when conditions in their apartments are in violation of the State Sanitary Code. General Laws c. 93A, § 9, is intended to encourage out-of-court settlements of landlord-tenant disputes, among others. *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975). If we adopted the judge's method of calculating damages, and did not allow damage

---

[11] The amended judgment recites that actual damage for September and October was $400 rather than $410. Due to this uncorrected clerical error, judgment was not entered for $1,210, the appropriate amount. In light of our disposition of the case, we need not act to correct this error.

recovery under G. L. c. 93A for defective conditions in rental units for those months during which tenants were exercising their rights under G. L. c. 239, § 8A, to withhold rent, landlords would be encouraged to litigate, rather than settle, by the prospect of avoiding payment of damages for defective conditions existing during the months that rent was withheld. Conversely, tenants would be put to the choice of continuing to pay rent for defective apartments and relying upon G. L. c. 93A suits to vindicate their rights, or withholding rent and thereby reducing their recovery of damages under G. L. c. 93A, should a suit under that statute become necessary. The Legislature, in enacting G. L. c. 93A, § 9, and G. L. c. 239, § 8A, could not have intended such a result.

In amending the judgment, however, the judge did take account of the unfairness of allowing recovery of the same amount of damages under G. L. c. 93A by tenants who have, and those who have not, withheld rent. He sought to remedy that unfairness by denying all recovery under G. L. c. 93A for those months during which rent was withheld. We believe a fair result can be reached, consistent with legislative policy as expressed in G. L. c. 239, § 8A, by calculating damages under G. L. c. 93A as did the judge in his original judgment, and then deducting the amount of the rent withheld. We hold, therefore, that where tenants who have withheld rent under G. L. c. 239, § 8A, or under the common law (see *Berman & Sons* v. *Jefferson,* 379 Mass. 196, 203-205 [1979]) prevail in a claim for damages under G. L. c. 93A, their damages under G. L. c. 93A shall be calculated by determining the rental value of the unit as warranted — the agreed rent — minus the value of the unit in a defective condition, plus any reasonable expenses incurred by the tenants as a result of the defective condition. The amount thus arrived at shall be doubled or trebled, in accordance with G. L. c. 93A, § 9 (3), if the judge finds that the unfair or deceptive act or practice was wilful or knowing, or that the landlord's refusal to grant relief in response to the tenants' demand letter was in bad faith.

From this figure, the total amount of rent withheld shall be subtracted to prevent an excessive recovery.

In this case, the agreed rent for five months ($330 times five, or $1,650) minus the sum of the fair market value of the apartment, as found for each of those five months ($525), equals $1,125. To this figure is added the tenants' reasonable expenses ($195), and the sum is doubled, since the judge found that the landlord's response to the tenants' G. L. c. 93A demand letter was not made in good faith, for a total of $2,640. From this amount, the rent withheld by the tenants ($990) is deducted. The tenants' damage award with respect to their G. L. c. 93A counterclaim is therefore $1,650.

5. *Recovery of damages under both G. L. c. 93A and G. L. c. 186, § 14.* The judge awarded $990 (three months' rent) to the tenants on a finding that the landlord had violated G. L. c. 186, § 14, the statutory covenant of quiet enjoyment. General Laws c. 186, § 14, as amended by St. 1974, c. 192, § 1, allows tenants to recover "actual and consequential damages or three month's rent, whichever is greater," for violation of that statute. General Laws c. 93A, § 9 (3), allows tenants to recover their "actual damages" on proof of a violation of that statute or the regulations promulgated thereunder. The judge awarded the tenants twice their actual damages for the landlord's violation of G. L. c. 93A.

The "triple rent" clause of G. L. c. 186, § 14, is "an incentive to the pursuit of relief where the actual and consequential damages are slight or are difficult to prove." *Darmetko* v. *Boston Hous. Auth.,* 378 Mass. 758, 762 (1979). Where a tenant has sought relief in court and has recovered in excess of both three months' rent and actual damages in a G. L. c. 93A action based upon the same facts as a concurrently asserted claim for damages for violation of G. L. c. 186, § 14, the "triple rent" clause of the latter statute does not serve its incentive function. The possibility of recovery under G. L. c. 93A has already encouraged the tenant to seek relief.

We have held recently that duplicative recovery of actual damages under G. L. c. 186, § 14, and other common law and statutory claims will not be permitted. *Simon* v. *Solomon,* 385 Mass. 91, 110-111 (1982). We now hold that, where a tenant has been awarded in excess of both three months' rent and actual damages under G. L. c. 93A on claims based upon the same set of facts as in a concurrent claim for damages for violation of G. L. c. 186, § 14, the recovery of damages under G. L. c. 186, § 14, would be duplicative and, therefore, will not be allowed.

6. *Disposition.* The judgment of the Boston Housing Court is reversed in part, and the case is remanded for entry of an amended judgment on the issue of damages, in accordance with this opinion.

*So ordered.*