LANA J. SCOFIELD & others[1] *vs.* BERMAN & SONS, INC.,
& others.[2]

Suffolk.   April 6, 1984. — October 3, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Consumer Protection Act,* Availability of remedy.  *Rent Control,* Rent in-
crease, Damages.  *Landlord and Tenant,* Reprisal by landlord.

A regulation of the Boston rent board authorizing a general rent adjustment
for housing subject to rent control but requiring that the adjustment not
take effect until the expiration of any current lease unless the tenant has
the option to terminate the lease was validly promulgated by the board
and did not violate a landlord's rights under the contract clause of the
United States Constitution. [92-102]

In an action by tenants seeking multiple damages, costs and attorneys' fees
pursuant to c. 15, § 9(*a*), of the Boston Ordinances of 1975 as a result
of their landlord's implementation of unlawful rent increases, the judge
did not err in granting summary judgment for the plaintiffs where uncon-
troverted factual allegations showed that the defendants, having notice
that the increases were invalid, failed to investigate the legality of the
increases and continued to demand, receive and retain increased rent
payments. [102-105]

Plaintiffs in a landlord-tenant case who had sustained their claim for mul-
tiple damages under c. 15, § 9(*a*), of the Boston Ordinances of 1975
as a result of the landlord's implementation of unlawful rent increases
were not entitled to additional recovery under G. L. c. 93A based on
claims alleging the same wrongful conduct. [105-107]

Where a tenant sustained no monetary damages as a result of a landlord's
retaliation against her for the exercise of her rights by refusing to permit
the tenant to remain as a tenant at will after the expiration of her lease,
the tenant was not entitled to damages under G. L. c. 93A, § 9, as
amended through St. 1971, c. 241. [107-108]

A landlord's refusal to allow a tenant to remain as a tenant at will following
the expiration of her lease constituted a "reprisal" under G. L. c. 186,
§ 18, where the landlord had an established policy of allowing lessees

---

[1] A. Larry Berren and other tenants who were members of the plaintiff
class.

[2] Martin S. Berman, Lila Gross, and William J. Allen.

to remain as tenants at will following the termination of their leases and where one of the landlord's principal reasons for denying the tenant's request was the tenant's reporting of an unlawful rent increase to the Boston rent board. [108-115] LYNCH, J., dissenting.

CIVIL ACTION commenced in the Housing Court of the City of Boston on May 12, 1977.

The case was heard by *Patrick J. King,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Harvey S. Shapiro* for the plaintiffs.

*James B. Fox* for the defendants.

LIACOS, J. The defendants appeal from a judgment entered in the Housing Court of the City of Boston declaring that the defendants violated c. 15, § 9 (*a*), of the Boston Ordinances of 1975 (c. 15), and Boston Rent Board Regulation 11, § 12(A) (Regulation 11), by unlawfully increasing the rent charged to the plaintiffs, tenants in rent-controlled apartments. The defendants also claim error in the judge's award of treble damages, costs, and attorneys' fees, pursuant to c. 15, § 9 (*a*), to those members of the plaintiff class who had paid the unlawful increase. The plaintiff class, as cross appellants, appeal from that aspect of the judgment which denied their claim for multiple damages under G. L. c. 93A, § 9 (1). The plaintiff Scofield appeals from the denial of her individual claims for damages resulting from the defendants' refusal to allow her to remain as a tenant at will following the expiration of her lease. See G. L. c. 186, § 18. The appeals were transferred here on our own motion. We affirm the judgment as to the class action, and reverse as to the individual Scofield claim.[3]

---

[3] The plaintiff class and Scofield, individually, seek authorization from us to apply to the trial court for additional attorneys' fees in connection with the appeals in this matter. Since we affirm the judge's rulings under c. 15, we will allow the plaintiffs to so apply for additional fees. See *Linthicum* v. *Archambault,* 379 Mass. 381, 388-389 (1979).

### 1. *Prior Proceedings.*

Scofield instituted this class action in May, 1977, seeking injunctive and declaratory relief, as well as monetary damages.[4] In June, 1977, the Housing Court judge certified the class[5] and enjoined the defendants from demanding, collecting, or pursuing any legal remedies against the plaintiffs to collect an increase in their rent. Subsequently, the judge found the defendants Berman & Sons, Inc. (Berman & Sons), and William J. Allen in contempt of court for violating the injunction.

In January, 1979, following extensive discovery, the plaintiffs moved for partial summary judgment on their class claims. See Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974). Following hearings on the motion, the judge granted summary judgment and damages to the plaintiff class.[6] A trial on Scofield's individual claims then was held before the judge. In November, 1981, the judge denied Scofield's individual claims and ordered the entry of final judgment in accordance with his earlier rulings on the summary judgment motion. At the parties' request, the

[4] The first complaint alleged only a violation of c. 15 and § 12 of the rent board's regulation. The first amended complaint included a claim by the class for damages under G. L. c. 93A, based on the defendants' unlawful rent increase. Scofield also sought individual relief against the defendants, based on their alleged unlawful "reprisals" against her by refusing to allow her to occupy her apartment as a tenant at will. The amended complaint also added William J. Allen, the landlord's property manager, as a party defendant.

The plaintiffs filed a second amended complaint, which added Martin S. Berman and Lila Gross as party defendants. Berman and Gross are general partners of Berman Central Realty, a Massachusetts limited partnership which owned the buildings managed by Berman & Sons, Inc., and wherein the plaintiffs rented their apartments.

[5] The class, as certified, consisted of "[A]ll persons who have been residing as tenants under a written lease with the defendant since November 24, 1976 at [properties owned by the defendants] Boston, Massachusetts, whose premises are subject to Rent Control, and whose tenancies are governed by a form of apartment lease utilizing a clause with language identical or substantially the same as that contained in Paragraph no. 33 of the lease executed by the named plaintiffs."

[6] The judge subsequently allowed Scofield's motion to supplement her individual claim for damages under G. L. c. 186, § 18, with a claim under G. L. c. 93A. A third amended complaint subsequently was filed.

judge made supplemental findings of fact and entered an amended judgment from which both parties appealed.

2. *Class Action Claims.*

A. *Facts.* The defendant Berman & Son is the managing agent of apartment buildings involved in these actions. The defendant William J. Allen is the property manager for Berman & Sons. The defendants Martin S. Berman and Lila Gross are general partners of Berman Central Realty, a Massachusetts limited partnership and owner of the properties. The apartments occupied by the plaintiffs were, at all relevant times, subject to c. 15 of the ordinances.

In 1975, the plaintiffs Scofield and Berren signed form leases with the defendants for a term of one year and from year to year thereafter unless terminated by either party as provided for by the lease. The form lease contained the following clause (hereinafter clause 33), which provided: "[I]f during the term of this lease or any extension or renewal thereof, rent control laws or laws regulating rents remain in effect or become applicable to the demised premises, and the Lessor is authorized or permitted to increase the maximum rent for the demised premises, then the rent to be paid by the lessee hereunder, commencing with the effective date of such authorization or permission shall be the maximum rental so authorized or permitted."

On November 24, 1976, the Boston rent board (Rent Board) authorized a general rent adjustment for housing subject to rent control in Boston. Regulation 11, § 12A, of the Rent Board, promulgated on December 16, 1976, to implement the general adjustment, provided in relevant part as follows: "Subject to the provisions of this Regulation the new maximum rent as established by this regulation may not be charged until the expiration of any lease or tenancy existing on the effective date of this Regulation, or unless the tenant is given the option of terminating the tenancy under a provision of the lease agreement."

The office manager of Berman & Sons called the Rent Board to inquire about the forthcoming adjustment. She was advised that the adjustment would take effect on January 1, 1977, and that only leases containing a "rent control clause" could im-

mediately implement the increase. Otherwise, a landlord could not implement the adjustment until the termination of the existing leases.

The defendants decided that clause 33 of their lease form was a valid rent control clause, and, accordingly, sent notices to their tenants in January and February, 1977, advising them that the authorized rent increase took effect as of January 1, 1977.[7] Several tenants in the apartments in issue refused to pay the increase, and the Rent Board advised certain tenants that the increase was unlawful. Scofield and another tenant informed Berman & Sons that an employee at the Rent Board had told them that clause 33 was invalid. A Rent Board compliance investigator also informed Berman & Sons by letter that their rent control clause was invalid and that, if they had any questions, they should call him. Subsequently, the defendants commenced small claims actions against at least twenty tenants who had not paid the increase. The defendants also sent them notices to quit for nonpayment of rent. Some of the tenants agreed to pay the increase after being sued.[8]

B. *Regulation 11*. The judge found that Regulation 11 was validly promulgated pursuant to the Rent Board's enabling legislation, which allowed the board to make regulations effecting general rent adjustments and to condition such adjustments so as to "remove hardships or to correct other inequities." See c. 15, §§ 2 (a), 5 (a), 6 (b). Moreover, the judge concluded that

---

[7] The adjustment amounted to an 11% increase in the rent charged to the plaintiffs by Berman & Sons. Scofield was notified that her monthly rent had been increased from $217 a month to $240 a month.

[8] In May, 1977, the plaintiffs' counsel wrote a letter to Berman & Sons pursuant to the Consumer Protection Act, G. L. c. 93A, § 9 (3), making demand upon the lessor for unlawfully imposing the increased rent upon Scofield and the other tenants before the expiration of their leases and without an opportunity to "opt-out" of their leases. Counsel demanded that the unlawful adjustment be rescinded and a reasonable offer of settlement tendered or he would commence a class action against the defendants under G. L. c. 93A. William Allen responded by letter to the demand letter stating that Berman & Sons desired and intended "to correct any incorrectly assessed rent increases," although they denied having engaged in fraudulent or deceptive practices. No further meetings nor settlement negotiations were held by the parties.

Regulation 11 provided an equitable solution to the problem of tenants who might not be able to afford the 11% increase, by delaying implementation of the adjustment until the expiration of the lease unless it contained an opt-out provision.

The defendants maintain that the judge erred in concluding that Regulation 11 was validly promulgated. The defendants argue that c. 15 enables the Rent Board only to establish a general adjustment of the maximum rent. It is a well-settled principle that a regulation is to be judged by the same standard as a statute, ordinance, or by-law. See *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138 (1949). "All rational presumptions are made in favor of the validity of [the] enactment." *Id.* Furthermore, an agency has much flexibility in interpreting a statute which it is charged with enforcing. *Grocery Mfrs. of Am., Inc.,* v. *Department of Pub. Health,* 379 Mass. 70, 75 (1979). When the agency is vested with broad authority, as is the Rent Board, to promulgate regulations which fulfil the purposes of its enabling legislation, such a regulation is not considered invalid if it relates reasonably to the objectives of that enabling legislation. See *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 855 (1977). *Thorpe* v. *Housing Auth. of Durham,* 393 U.S. 268, 280-281 (1969).

In St. 1969, c. 797, as amended by St. 1970, c. 863, § 1, the Legislature declared "that a serious public emergency [exists] in the city of Boston . . . which emergency continues to be marked by a substantial shortage of rental housing accommodations; that, unless residential rents continue to be regulated and controlled and unless evictions of tenants are regulated and controlled, such emergency . . . will produce serious threats to the public health, safety and general welfare of the citizens of [Boston]." The statute further provided that to improve such an emergency shortage of rental housing, the city may, by ordinance, control the rents of certain housing. See *id.* at c. 863, § 2. The ordinance, which was enacted by the city council as c. 15, provided in § 5 (a) that the Rent Board "shall, by order or regulation . . . make such individual or general adjustments . . . of the maximum rent . . . as may

be necessary to remove hardships or to correct other inequities." Chapter 15 further provided that the Rent Board may promulgate regulations to establish a general adjustment of maximum rent "subject to such conditions . . . as the board shall determine." *Id.* at § 6 (*b*).

Based on the foregoing provisions we conclude that the judge correctly held that Regulation 11 relates reasonably to the objectives of the statute and the ordinance. Cf. *McGrath* v. *Mishara,* 386 Mass. 74, 76, 81-82 (1982). Implicit in the Rent Board's power to establish a general rent adjustment is the authority to set certain conditions on when and how rent increases are to take effect. Cf. *Flynn* v. *Cambridge,* 383 Mass. 152, 158 (1981) (grant of express power to municipality carries with it all unexpressed, incidental powers necessary to effectuate express authority); 3 C. Sands, Sutherland Statutory Construction § 64.02 (4th ed. 1974). By requiring that the adjustment not take effect until the end of the current lease unless the tenant has the option to terminate the lease agreement, Regulation 11 reasonably accommodated the competing equities of both landlord and tenant.

The judge also denied the defendants' claim that Regulation 11 violated the contract clause of the United States Constitution by retroactively applying to deprive them of rights under a contract that was executed before the effective date of the regulation. See art. 1, § 10, cl. 1, of the United States Constitution.[9] The defendants claim this to be error and argue also that the judge should have decided that a retroactive application of the regulation would constitute a deprivation of property without due process of law.

By the terms of the defendants' lease agreement, the lessor was not entitled to a rent increase unless "authorized or permitted" to adjust the rent under the "rent control laws . . . regulating rents . . . [in] the demised premises." This provision clearly provides that any adjustment would be subject to the Rent Board's approval. It is anomalous for the defendants now to

---

[9] Article 1, § 10, cl. 1, of the United States Constitution provides, in part: "No state shall . . . pass any . . . law impairing the obligation of contracts."

argue that Regulation 11 deprived them of rights under their lease agreement. In any event, Regulation 11 did not deprive the defendants of their right to receive a rent increase. Under Regulation 11, the defendants could have obtained the increase immediately if their lease had contained the opt-out provision, otherwise the regulation merely deferred the implementation of the increase until current leases expired.[10] Previously, we implicitly approved forestalling the immediate implementation of rent increases, based on a decision by the Boston rent control administration which used language almost identical to the wording of Regulation 11. See *McGrath* v. *Mishara, supra* at 76, 81, 83.

C. *Multiple damages.* The judge ruled that, given the absence of an opt-out provision, clause 33 of the lease did not satisfy Regulation 11. Thus, he ruled the defendants were precluded from charging the rent adjustment until the expiration of the leases. By demanding and, in some cases, receiving the unlawful increases from the plaintiffs prior to this time, the defendants violated c. 15 of the ordinance. See c. 15, § 9 (*a*).[11] The judge found, as matter of law, that, based on the undisputed facts, the defendants failed to take "practicable precautions" against the occurrence of a § 9 (*a*) violation. Thus, the judge

---

[10] The provision in clause 33, which states that the defendants may obtain a rent increase "commencing [on] the effective date of the [Rent Board's] authorization," seems to us in no way inconsistent with the provision of Regulation 11, § 12A, which specifies the time and circumstances under which a rent increase may be authorized.

[11] Section 9 (*a*) of c. 15 provides: "Section 9. *Civil Remedies.* (a) Any person who demands, accepts, receives, or retains any payment of rent in excess of the maximum lawful rent, in violation of the provisions of this ordinance, or any rule, regulation, or order hereunder promulgated, shall be liable . . . to the person from whom such payment is demanded, accepted, received, or retained, . . . for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of one hundred dollars, or not more than three times the amount by which the payment or payments demanded, accepted, received, or retained exceed the maximum rent which could be lawfully demanded, accepted, received, or retained, whichever is the greater; provided that if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, the amount of such liquidated damages shall be the amount of the overcharge or overcharges."

ruled that the defendants were liable to each member of the plaintiff class who had paid the increase, the greater of $100, or three times the amount of illegal rent received, plus reasonable attorneys' fees.

The defendants contend that the judge erred in granting the plaintiffs' motion for partial summary judgment pursuant to c. 15, § 9 (*a*). Under § 9 (*a*), the defendants argue, a material issue of fact existed concerning whether the defendants acted wilfully or failed to take practicable precautions against the occurrence of a violation of the ordinance.[12]

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Once the moving party sustains the burden of proving the absence of a material issue of fact, the opposing party may not rely on his pleadings or general denials, but must "set forth specific facts" to show there is a genuine, triable issue. See *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 554 (1976). Mass. R. Civ. P. 56 (e). We draw inferences from the facts contained in the materials which accompany a motion for summary judgment in the light most favorable to the party opposing the motion. However, neither "vague allegations and conclusory statements, nor assertions of inferences not based on underlying facts will suffice" to sustain the claims in favor of, or against, granting the motion. See *First Nat'l Bank* v. *Slade,* 379 Mass. 243, 246 (1979).

Multiple damages and attorneys' fees and costs can be awarded under c. 15, § 9 (*a*), if the defendants fail to show that

[12] We need not deal with the defendants' claim that the summary judgment should not have been entered under G. L. c. 93A, § 9, since there was evidence of the defendants' good faith attempts to settle the dispute and of the plaintiffs' refusal to accept the overcharges as a settlement. The summary judgment order of the judge in so far as it awarded damages under G. L. c. 93A was superseded by his subsequent, amended judgment relieving the defendants from paying duplicative damages under both G. L. c. 93A and c. 15.

their violation of the ordinance was "neither willful *nor the result of failure to take practicable precautions against the occurrence of* the violation" (emphasis supplied). A violation of the ordinance occurs when a landlord "demands, accepts, *receives,* or *retains* . . . rent in excess of the maximum lawful rent" (emphasis supplied). *Id.*

The essential factual allegations presented by the plaintiffs' complaints, affidavits, and other materials supporting their motion were not refuted. The record shows that the defendants were placed on notice that their rent control clause was invalid. However, they refused to investigate the correctness of this claim. The defendants not only refused to do anything at this juncture to determine the legality of their increase; they engaged in further violations of c. 15 by continuing to demand that they receive the increase, and by retaining the overcharges already received. Thus, even if we assume that the defendants' averments showed the existence of a triable, factual issue concerning their failure to take practicable precautions in initially implementing the rent increase, the defendants have not demonstrated an issue of material fact with respect to their continuing violations of c. 15 by demanding, receiving, and retaining the unlawful increases after being placed on notice that this conduct was illegal.

We construe "practicable precautions" to mean those precautions which a reasonable person in the defendants' position would take to guard against violating c. 15. A genuine factual issue must be demonstrated by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank* v. *Cities Serv. Co.,* 391 U.S. 253, 288-289 (1968). Accord, *Hahn* v. *Sargent,* 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). No such evidence was presented here. We thus conclude that the judge acted correctly in granting the plaintiffs' motion for partial summary judgment. Cf. *Nunez* v. *Superior Oil Co.,* 572 F.2d 1119, 1124 (5th Cir. 1978) (judge warranted in deciding on summary judgment motion that party acted reasonably or unreasonably, even if conclusion involves mixed question of fact and law);

*Hahn* v. *Sargent, supra* at 468 (party against whom summary judgment sought not entitled to trial merely because state of mind is essential element in cause of action; party must still show ability to produce evidence sufficient to reach jury on his claim). Compare *Noyes* v. *Quincy Mut. Fire Ins. Co.,* 7 Mass. App. Ct. 723, 726-727 (1979) (summary judgment should not have entered where undisputed facts showed triable issue concerning defendants' knowledge or wilfulness in violating G. L. c. 93A).

D. *Prejudgment interest.* The plaintiffs contend that the defendants' retention of the rent overcharge entitled them to a separate award of prejudgment interest under G. L. c. 93A, § 9.[13] The plaintiffs claim that the retained unlawful rents constituted a violation of both Regulation 11 and G. L. c. 93A, § 2 (c),[14] and the continued deprivation of this money warrants compensation in the form of prejudgment interest. The plaintiffs propose that we imply, in G. L. c. 93A, § 9, the authority of courts to award prejudgment interest as part of the damages in a consumer's claim so as to facilitate the statute's objective of promoting reasonable settlements between the parties. See *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 857

---

[13] General Laws c. 93A, § 9(1), prior to 1979 (as amended through St. 1971, c. 241), provided in pertinent part: "Any person who purchases or leases goods, services or property, real or personal primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of said section two may . . . bring an action in the superior court in equity for damages . . . ."

Only the members of the plaintiff class who were awarded damages for their payment of the unlawful rent are seeking additional damages on this appeal. The plaintiffs asserted a claim for interest on the amount of the unlawful rent overcharge under G. L. c. 93A, § 9, in their second and third amended complaints.

[14] On the plaintiffs' claim that the defendants violated G. L. c. 93A, § 2 (c), by their violation of Regulation 11, the judge awarded summary judgment to the plaintiffs.

(1983).[15] The difficulty with this argument is that, while the plaintiffs sought cumulative damages under c. 15 and G. L. c. 93A, they did not raise specifically the claim of prejudgment interest before the judge. This issue is not properly before us, as it is raised for the first time on appeal. See *Jones* v. *Wayland,* 374 Mass. 249, 252 n.3 (1978). Assuming, however, that damages under G. L. c. 93A, § 9, can be computed as "interest" for loss of the use of money wrongfully detained, see *Guenard* v. *Burke,* 387 Mass. 802, 809 (1982), the question remains whether such damages should be cumulatively awarded.[16]

The judge, in his amended order, took cognizance of the *McGrath* v. *Mishara,* 386 Mass. 74 (1982), and *Wolfberg* v. *Hunter,* 385 Mass. 390 (1982), decisions and, in order to avoid cumulative damage recovery, allowed recovery only under c. 15. The amended order thus superseded his earlier order granting multiple damages to the plaintiffs pursuant to G. L. c. 93A, § 9 (1). On the basis of the *Mishara* and *Wolfberg* decisions, we conclude that separate damages may not be recovered under both c. 15 for the defendants' unlawful demand for rent and G. L. c. 93A, based on the defendants' unlawful retention of the amounts collected. The illegal acts involve the defendants' conduct in demanding and, in some cases, receiving the unauthorized rent increase, in violation of both the ordinance and G. L. c. 93A. Thus, where the plaintiffs have sustained their claim to recover multiple damages, under c. 15,

---

[15] The plaintiffs rely on a provision of the Clayton Antitrust Act as an analogous statute to § 9, which provides that a plaintiff who has been injured by a violation of the antitrust laws may move to recover simple interest on the actual damages awarded on this claim. See 15 U.S.C. § 15 (1976 & Supp. 1981), as amended by 1980 Pub. L. 96-349, § 4 (a) (1), 94 Stat. 1156. We decided, however, that the Legislature consciously chose not to follow § 15 of the Clayton Act in enacting § 9. See *International Fidelity Ins. Co.* v. *Wilson, supra* at 855.

[16] The plaintiffs who paid the rent overcharge to the defendants were denied the use of the illegal increase which, the judge concluded, was demanded and received in violation of G. L. c. 93A, § 2 (*c*). The plaintiffs' loss of the use of this amount of money resulted from this violation of the Consumer Protection Act, *Guenard, supra* at 809-810, and the defendants' refusal, on demand, to tender the amount of the overcharge due the plaintiffs.

they are precluded from duplicate recovery based on claims alleging the same wrongful conduct under G. L. c. 93A. See *Mishara, supra* at 85. Although the plaintiffs may recover under whichever statute offers them the greater amount of damages for the defendants' same wrongful conduct, see *Mishara, supra* at 84, there is no showing on this record that, if damages were set under c. 93A, they would have received a larger award. There was no error.

3. *Scofield's Individual Action.*

A. *Facts.* Berman & Sons notified Scofield by letter dated June 27, 1977, that her current lease was to terminate August 31, 1977, in conformance with its terms. The letter further stated that Scofield could extend her tenancy for an additional year under the lease addendum which incorporated the rent increase approved by the Boston Rent Board. Because Scofield thought that she could not afford to pay the rent and decided to find subsidized housing, she chose not to sign the addendum. Instead, she requested permission to remain as a tenant at will and pay the new rent until she could find cheaper housing. At that time, Scofield could not provide Berman & Sons with an estimated date by which she could vacate her apartment. According to the procedure at Berman & Sons, a committee comprised of Martin Berman, Donna McCormack, William Allen, and another employee reviewed the tenant's request to become a tenant at will. The committee denied Scofield's request by means of a letter to her attorney, authored by Allen and dated July 14, 1977. In the letter Allen stated that he believed that the Housing Court's order allowed him only to offer the new one-year lease at maximum rent, and that he expected Scofield either to sign the lease addendum or to notify him that she would vacate the apartment.[17]

B. *Damages pursuant to G. L. c. 93A, § 9.* In November, 1981, the judge issued his order on Scofield's individual claims under G. L. c. 186, § 18, and G. L. c. 93A, following a one-day trial on these issues. The judge ruled that Scofield could

---

[17] Scofield's counsel responded, by letter, that his client was offering to pay the new maximum rent under a tenancy at will.

not recover damages under G. L. c. 93A, since the statute, as it read prior to the 1979 amendment, required the consumer to show a loss of tangible real or personal property resulting from the unfair or deceptive act or practice. See *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 44-45 (1975). The judge found that Scofield had suffered no damages under G. L. c. 93A as a result of the defendants' refusal to allow her to remain as a tenant at will.[18]

Scofield does not dispute the correctness of the judge's ruling that she suffered no monetary damages under G. L. c. 93A. Instead, she claims that the defendants' failure to satisfy her rightful claim under G. L. c. 186, § 18, once a formal written demand had been made, amounted to a loss of money or property under G. L. c. 93A. Scofield cites no case law to support this contention. Since her claim is based on G. L. c. 93A, § 9, prior to its 1979 amendment, we conclude that her claim is untenable because it does not allege an actual loss or deprivation of money or other property. See *Baldassari, supra* at 45.

C. *The "reprisal" claim.* On Scofield's claim under G. L. c. 186, § 18, the judge found that Scofield had proved by a preponderance of the credible evidence that one of the defendants' principal motives in refusing her request to remain as a tenant at will in July, 1977, was her report of the defendants' unlawful conduct to the Rent Board in 1977.[19] In his later order for supplemental findings and entry of an amended judgment, the judge adopted other specific findings of fact, requested by Scofield, relevant to the defendants' "motive." There was no evidence that any tenant, other than Scofield, had been denied a request to occupy as a tenant at will. The judge found that

[18] Scofield vacated her apartment upon the expiration of her lease. She did not pay the increased rental charge. Indeed, she realized a significant savings in her housing cost at her new subsidized premises.

[19] The judge correctly applied the version of G. L. c. 186, § 16, prior to its 1978 amendment. The judge noted that Scofield's factual scenario did not involve any of the circumstances in the statute which gave rise to a presumption of retaliation. See G. L. c. 186, § 18 (receipt of notice of termination, substantial increase in rent, or substantial alteration in terms of tenancy within six months of tenant's complaint creates rebuttable presumption that notice is reprisal against tenant).

there were seventeen other tenants of the defendants who had been granted tenancies at will and who were living under such agreements between September and December, 1977, and there was no record why thirteen of these tenants were granted tenant-at-will status. By April, 1978, several of these tenants had occupied as tenants at will for time periods ranging from nine to fifty months.[20] Certain other members of the plaintiff class were given tenant-at-will status by the defendants in August, 1977, and by May, 1978, the defendants had adopted a policy of requiring all their tenants to utilize at-will agreements.

The judge, however, concluded that the defendants' refusal to accord Scofield tenancy-at-will status was not a "reprisal" within the meaning of G. L. c. 186, § 18. The judge noted that the statute does not define "reprisal" except to provide that certain action, such as a substantial alteration in the terms of the tenancy or a termination of the tenancy within six months after the exercise of a tenant's legal rights, raises a rebuttable presumption that such action is a reprisal. The judge found unpersuasive Scofield's claim that Berman & Sons' refusal to allow her to remain as a tenant at will amounted to a violation of the statute where the defendant had no legal obligation to extend this benefit to her. The judge noted that it was Scofield who refused the defendants' offer to renew her lease. Scofield had no right to expect the defendants to accede to her request for a substantial alteration in the terms of her tenancy. Thus, the judge concluded that the defendants' conduct did not constitute a reprisal against Scofield for her legally protected actions under G. L. c. 186, § 18, and therefore entered judgment in favor of the defendants on all Scofield's individual claims.

Scofield claims that G. L. c. 186, § 18, should be construed to prohibit a landlord's refusal, based on a tenant's exercise of protected rights, to extend to that tenant a benefit that regularly has been accorded other tenants. The defendants contend that Berman & Sons' refusal to allow Scofield to remain as a

---

[20] The judge found Scofield's reason for wanting at-will tenancy was the type of reason which, under normal circumstances, would have resulted in the landlord's acceding to the tenant's request.

tenant at will was not a "reprisal" within the meaning of G. L. c. 186, § 18. The defendants correctly point out that no Massachusetts case has ever held, or implied, that a landlord's refusal to grant a tenant's request to occupy as a tenant at will constitutes a reprisal. But cf. 940 Code Mass. Regs. § 3.17 (6) (b) (1981) (unfair or deceptive practice under G. L. c. 93A for property owner to "retaliate in any manner against a tenant for exercising . . . any legal rights as set forth in c. 186, § 18").

We begin our construction of G. L. c. 186, § 18, with the words of the statute, which must be given "their usual and ordinary meaning considered in light of the aim to be accomplished by the Legislature." See *Prudential Ins. Co.* v. *Boston,* 369 Mass. 542, 546 (1976). General Laws c. 186, § 18, prior to its 1978 amendment, provided in pertinent part: "Any person . . . who threatens to or takes reprisals against any tenant of residential premises for reporting to . . . any . . . board having as its objective the regulation of residential premises a violation or a suspected violation of any health or building code or of any other municipal by-law or ordinance or state . . . law . . . which has as its objective the regulation of residential premises . . . shall be liable for damages . . . ."

The legislative history of the statute demonstrates that the Legislature intended the law to apply to a broad range of factual situations wherein tenants are retaliated against for seeking to enforce protected rights under our housing laws. See 1969 Senate Doc. No. 1327. Although proposed drafts of the statute limited its coverage to tenants who reported sanitary or building code violations, see 1969 Senate Doc. No. 1139, § 127K, 1969 House Doc. No. 2926, the law, as enacted, applied to tenants who complained of violations of any "municipal ordinance or state law" which has "as its objective the regulation of residential premises." G. L. c. 186, § 18. Clearly the ordinance involves the regulation of residential premises. The Legislature subsequently broadened the statute's coverage to include tenants who participated in a tenants' union, or similar organization, or who reported a violation of Federal law regulating residential premises. See St. 1972, c. 99, § 1. In 1973, the statute was amended again to apply to tenants who exercised

their rights to be reimbursed for paying their landlord's gas or electric bills. See St. 1973, c. 858, § 3 (inserting reference to G. L. c. 164, § 124D).[21] The Legislature's usage of broad language in the initial statute and its amended versions to describe activities protected against reprisal by a landlord, and its expansion of these protected activities in subsequent amendments, lead us to conclude that G. L. c. 186, § 18, protects a tenant who was retaliated against by a landlord for reporting violations of the rent control ordinances.

General Laws c. 186, § 18, prohibits a threatened or actual "reprisal" against a tenant for engaging in a protected activity. The ordinary meaning of a "reprisal" is "a retaliatory act." Webster's Ninth New Collegiate Dictionary at 1,000 (1983). We construe G. L. c. 186, § 18, to utilize this broad definition tailored, however, to achieve the statutory objective of protecting those tenants who have been retaliated against by landlords due to their exercise of legal rights under the housing laws. Cf. *Prudential Ins. Co., supra* at 547 (courts must construe statute as written and a contingency for which no provision made does not warrant judicial legislation). We think that if the Legislature had intended "reprisal" to have a narrow meaning, it would have specified those acts which would constitute a reprisal, and it would not have provided, in a separate paragraph that "[t]he receipt of any notice of termination of tenancy . . . or, of any substantial alteration in the terms of the tenancy within six months after the tenant has commenced, proceeded with, or obtained relief in such action . . . [or] made such report or complaint [relating to the building in which the tenant resides] shall create a rebuttable presumption that such notice . . . is a reprisal against the tenant for [making such report or complaint]." G. L. c. 186, § 18, as appearing in St. 1978, c. 149, § 1. By its terms, the statute extends to "reprisals"

---

[21] The statute again was amended in 1978, extending coverage to tenants who were retaliated against, based on their commencement of actions or attainment of relief in actions to enforce laws which regulate residential premises. See St. 1978, c. 149, § 1.

other than those acts which give rise to the rebuttable presumption described in the latter paragraph.[22] Cf. G. L. c. 239, § 2A.

It is indisputable that a lessor has no legal duty to permit a tenant to occupy the demised premises following the termination of her lease or tenancy, and may bring an action for summary process against the tenant who wrongfully holds over in the premises. See *Gunsenhiser* v. *Binder,* 206 Mass. 434, 437 (1910); G. L. c. 239, § 1. There is, however, considerable persuasive authority, from courts of other jurisdictions, which indicates that a lessor lawfully may not terminate a tenancy when that action is taken in retaliation for the tenant's reporting violations of the housing laws.

In support of the principle that landlords may not seek to evict tenants for reporting violations of housing laws is the landmark case of *Edwards* v. *Habib,* 397 F.2d 687 (D.C. Cir. 1968), cert. denied, 393 U.S. 1016 (1969). The landlord in *Edwards* gave the tenant proper statutory notice to vacate her apartment soon after she reported sanitary code violations, and he obtained a judgment for possession of the premises. *Id.* at 688-689. Judge J. Skelly Wright noted that, under the District of Columbia housing code, a landlord has the right to evict a tenant with or without cause. *Id.* at 688. The need effectively to implement and enforce remedial legislation such as the housing and sanitary codes, however, impliedly prohibited landlords from evicting tenants from month to month in retaliation for their reporting code violations. *Id.* at 699-700. "The notion that the effectiveness of [such] legislation will be inhibited if those reporting violations of it can legally be intimidated is so fundamental that a presumption against the legality of such intimidation can be inferred as inherent in the legislation even

---

[22] Several State statutes have specifically delimited the proscribed types of retaliatory action which a landlord could not engage in to penalize a tenant for exercising protected rights. See, e.g., Ariz. Rev. Stat. Ann. § 33-1381 (1974) (increasing rent, decreasing services, or bringing or threatening to bring action for possession); Cal. Civ. Code § 1942.5(c) (West Supp. 1984) (increase rent, decrease services to which tenant entitled, or cause tenant to quit premises involuntarily); N.J. Stat. Ann. § 2A:42-10.10 (West Supp. 1983) (serving notice to quit or instituting any action against tenant for possession of premises).

if it is not expressed in the statute itself." *Id.* at 701-702. In reversing the judgment for the landlord and remanding the case, the judge concluded that the tenant must prove the factual issue whether the landlord had an impermissible retaliatory purpose in evicting the tenant. Several jurisdictions have followed the *Edwards* policy of encouraging tenants to report violations of the housing laws by interpreting their retaliatory action statutes or other housing laws to prohibit landlords from seeking to dispossess tenants for exercising these legal rights. See, e.g., *Schweiger* v. *Superior Court,* 3 Cal. 3d 507, 517 (1970); *Clore* v. *Fredman,* 59 Ill. 2d 20, 27-28 (1974); *Parkin* v. *Fitzgerald,* 307 Minn. 423, 428-429 (1976); *Delmat Corp.* v. *Kahn,* 147 N.J. Super. 293, 299-300 (1977); *Dickhut* v. *Norton,* 45 Wis. 2d 389, 399 (1970). Cf. *Silberg* v. *Lipscomb,* 117 N.J. Super. 491, 496 (1971) (under N.J. Stat. Ann. § 2A:42-10.10 [West Supp. 1983]). *Barela* v. *Superior Court,* 30 Cal. 3d 244, 249 (1981). The salutary policy of the *Edwards* decision is applicable to the present case. Effective enforcement of the rent control laws is promoted when tenants are not inhibited in reporting suspected or actual violations of these laws by a fear of reprisal by landlords. We think that the Legislature may have anticipated that tenants would be deterred from disclosing landlords' infractions of the housing laws due to a landlord's largely unrestricted power to terminate tenancies at will. The enactment of G. L. c. 239, § 2A, also reflects a desire to protect tenants who report such violations under G. L. c. 186, § 18, from retaliatory terminations of their at-will tenancies.[23]

[23] General Laws c. 239, § 2A, as appearing in St. 1978, c. 149, § 2, provides, in relevant part: "It shall be a defense to an action for summary process that such action or the preceding action of terminating the tenant's tenancy, was taken against the tenant for the tenant's act of commencing, proceeding with, or obtaining relief in any judicial or administrative action the purpose of which action was to obtain damages under or otherwise enforce, any federal, state or local law, regulation, by-law, or ordinance, which has as its objective the regulation of residential premises, or exercising rights pursuant to section one hundred and twenty-four D of chapter one hundred and sixty-four, or reporting a violation or suspected violation of law as provided in section eighteen of chapter one hundred and eighty-six, or organizing or joining a tenants' union or similar organization."

The efficacious implementation of rent control laws will not support a decision which would require a landlord to allow lessees to become tenants at will after the expiration of their lease. A landlord has the unfettered right to dictate the type of tenancy under which a tenant may occupy the premises, and lawfully may refuse to let any tenant rent on an at-will basis. However, when a landlord has an established policy of allowing lessees to remain as tenants-at-will following the termination of their leases, the landlord cannot lawfully refuse to apply that policy to a tenant because that tenant has reported the landlord's violations of the rent control laws. Cf. *Golphin* v. *Park Monroe Assocs.*, 353 A.2d 314, 315, 317-318 (D.C. 1976). In *Golphin,* the Court of Appeals decided that a tenant who was denied an at-will tenancy following the expiration of his lease, in contravention to the landlord's established policy, could defend against a possession action by showing that the landlord's refusal was in retaliation for his tenant-organizing activities. *Id.*[24]

We conclude, based on the findings of the judge, that the defendants' refusal to allow Scofield to remain as a tenant at will following the expiration of her lease constituted a "reprisal" under G. L. c. 186, § 18, for her reporting the landlord's unlawful rent increase to the Rent Board. A landlord who refuses to apply an established policy of permitting at-will tenancies to a tenant because of her efforts to enforce the laws violates the legislative intent that there be good faith and fair dealing between landlords and their tenants. The judge concluded that Scofield had proved, by a preponderance of the

---

[24] Similar to G. L. c. 186, § 18, Housing Regulations of the District of Columbia, Retaliatory Acts § 2910 (1982), is worded broadly: "No *action* or proceeding to recover possession of a habitation may be brought against a tenant, *nor shall an owner otherwise cause a tenant to quit a habitation involuntarily,* 'nor demand an increase in rent from the tenant, nor decrease the services to which the tenant has been entitled, nor increase the obligations of a tenant,' in retaliation against a tenant's: (a) Good faith complaint or report concerning housing deficiencies made to the owner or a governmental authority, directly by the tenant or through a tenant organization. (b) good faith organization of or membership in a tenant organization. (c) *good faith assertion of rights under these Regulations.*" (Emphasis supplied.)

credible evidence, that "one of Berman's principal motives" for refusing Scofield's request was her reporting the unlawful increase to the Rent Board. Cf. *Robinson* v. *Diamond Hous. Corp.*, 463 F.2d 853, 865 (D.C. Cir. 1972) (in possession action, fact finder may find for landlord who presents evidence that legitimate business reasons principally motivated decision to evict tenant). Accordingly, Scofield is entitled to recover from the defendants, jointly and severally,[25] for their violation of G. L. c. 186, § 18, an amount equal to not less than one month's rent nor more than three months' rent, and reasonable attorneys' fees and costs of the suit.[26]

4. *Conclusion*.

We remand this case to the judge of the Housing Court to enter an appropriate order on Scofield's claim under G. L. c. 186, § 18, consistent with the principles expressed in this opinion. The judgment as to the class claim is affirmed.

*So ordered.*

LYNCH, J. (dissenting). I dissent only from that part of the opinion that concludes that the defendant landlord's refusal to

---

[25] On the G. L. c. 186, § 18, claim, Scofield sought joint and several liability against Berman & Sons, Inc., William J. Allen, Martin S. Berman, and Lila Gross. The statute provides for joint and several liability by subjecting to payment of damages "any person or agent thereof . . . who takes reprisals" against a tenant of residential property.

We dismiss summarily Scofield's argument that G. L. c. 186, § 18, is a statute which exacts a penalty from wrongdoers with reference to the degree of their culpability, thereby entitling the plaintiff to recover damages from both Berman and Allen. In contrast to other statutes which specifically provide that the degree of a defendant's personal fault shall enter into the assessment of damages for which he is liable, G. L. c. 186, § 18, provides only that liability shall be no less than one month's rent nor more than three months' rent, or the amount of actual damages, *whichever is greater*. Cf. *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 856 (1983) (independent liability of defendants upheld under multiple damages provisions of G. L. c. 93A which assess individual fault of each wrongdoer).

[26] As Scofield admits, she suffered no actual damages as a result of the unlawful reprisal and her damages thus are limited to an amount no less than one month's rent and no greater than three months' rent. G. L. c. 186, § 18.

allow Scofield to remain as a tenant at will following the expiration of her lease constitutes a reprisal under G. L. c. 186, § 18, for her reporting the landlord's unlawful rent increase to the Rent Board. *Ante* at 114. The majority correctly point out that the landlord had no obligation to extend to Scofield tenant-at-will status at the expiration of her lease. Although the landlord refused Scofield's request for tenant-at-will status, she could have remained on the premises as a tenant at sufferance, *Iorio* v. *Donnelly,* 343 Mass. 772 (1961). Without delving at length into the law of tenancies at sufferance under modern legislation (see *King* v. *G & M Realty Corp.,* 373 Mass. 658, 663-664 [1977]), I conclude that this change of status was not significant enough to constitute a "reprisal" by the landlord. It is clear that as a tenant at sufferance she could have remained on the premises until the landlord took action to regain possession, *King* v. *G & M Realty Corp., supra,* and during the period of her occupancy she remained obligated to pay rent. G. L. c. 186, § 3. I conclude that no reprisal existed in such a situation, at least until the landlord issued a notice to quit or took some other affirmative step to regain possession.

All of the decisions cited in the majority opinion concerning other jurisdictions deal with evictions, and typically these decisions find retaliatory action to be a defense to proceedings instituted by the landlord to regain possession. The present case differs from those eviction cases in that the defendant landlord here took no affirmative action to dispossess the plaintiff of the apartment. For example, in *Golphin* v. *Park Monroe Assocs.,* 353 A.2d 314 (D.C. 1976), the tenant, denied at-will status at the expiration of a lease, remained in the apartment and successfully defended an eviction proceeding. The court based its decision explicitly on the *improper use of judicial process* that occurs when a landlord brings eviction proceedings for retaliatory reasons. *Id.* at 317-318. I view this line of decisions from other jurisdictions as an indication of judicial reluctance to see the courts used as an instrumentality by landlords seeking illegal retaliation.