NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-300                                            Appeals Court


CASSANDRA FERREIRA  vs.  LAURAL CHARLAND.[1]


No. 22-P-300.

Hampden.     April 28, 2023. - September 5, 2023.

Present:  En banc.[2]


Summary Process, Appeal, Notice to quit.  Landlord and Tenant,
     Termination of tenancy, State sanitary code, Eviction.
     Practice, Civil, Summary process, Counterclaim and cross-
     claim.  Statute, Construction.



     Summary process.  Complaint filed in the Western Division
of the Housing Court Department on December 14, 2020.

     The case was heard by Robert G. Fields, J.


     Gabriel L. Fonseca for the defendant.
     Lawrence J. Farber for the plaintiff.
     Andrea Joy Campbell, Attorney General, Alda Chan, Assistant
Attorney General, & Sean P. Attwood, Special Assistant Attorney
General, for the Attorney General, amicus curiae, submitted a
brief.

---

     [1] Jason Charland and James Vasquez were also named as
defendants in the complaint.  Only Laural Charland has appealed
from the judgment.

     [2] Justice Sullivan participated in the deliberation on this
case prior to her retirement.

Richard M.W. Bauer, Ilana B. Gelfman, Susan Hegel, Daniel Ordorica, & Joshua M. Daniels, for Volunteer Lawyers Project, amicus curiae, submitted a brief.

BLAKE, J.  In this no-fault summary process action, the question on appeal is whether the landlord's tender of damages to the tenant[3] for the landlord's violation of G. L. c. 186, § 22 (water use statute), after the landlord commenced summary process proceedings, precluded the tenant from asserting G. L. c. 239, § 8A (§ 8A), as a defense to possession (as set forth in the tenant's counterclaim).[4]  A judge of the Housing Court answered the question "yes," reasoning that the landlord's tender was "knowingly accepted by the tenant without any reservation of rights."  He entered judgment awarding Cassandra Ferreira (landlord) possession of the leased premises.  Tenant Laural Charland (tenant) appeals, arguing that the landlord's tender of damages did not settle her counterclaim and that the judge misinterpreted § 8A.  We conclude that a landlord's violation of the water use statute gives the tenant a potential defense to possession under § 8A.  We also conclude that a

---

[3] The lease was signed by three tenants -- Laural Charland, Jason Charland, and James Vasquez.  Because this appeal only pertains to Laural Charland, we refer to tenant in the singular.

[4] The tenant also asserted counterclaims for violation of the security deposit and the last month's rent laws pursuant to G. L. c. 186, § 15B, neither of which the tenant presses on appeal.

landlord's tender of money damages to the tenant, after the landlord commenced summary process proceedings, does not moot the tenant's claim to possession, unless the tenant has clearly released the claim, because money damages are but one of two available remedies -- the other being the tenant's ability to remain in the property (possession) upon proof of a valid counterclaim or defense under § 8A. Here, because the tenant's § 8A counterclaim effectively was dismissed prematurely on grounds of mootness, the tenant did not have the opportunity to prove her counterclaim at trial. We therefore vacate the judgment, and remand for further proceedings consistent with this opinion.[5]

Background. We recite the facts upon which the parties agree, supplemented with uncontested facts from the record. In 2016, the tenant signed a lease for a single-family home that, since approximately 2013, had been the landlord's primary residence.[6] The lease required the tenant to pay for utilities, including hot water and city water and sewer charges. In July 2020, the landlord notified the tenant that she needed to move back into her home but due to the Massachusetts moratorium on

---

[5] We acknowledge the amicus briefs submitted by the Attorney General and the Volunteer Lawyers Project.

[6] The landlord testified that the amount of rent was intended to cover the mortgage and a portion of her real estate taxes for the property.

evictions, she could not serve the tenants with a notice to quit at that time.  See St. 2020, c. 65, § 3.[7]

On December 14, 2020, the landlord filed a no-fault summary process action based on a thirty-day notice to quit, seeking to evict the tenant.  The tenant filed an answer and counterclaims, which as relevant here, asserted that the landlord violated the water use statute and which specifically sought both possession and money damages.[8]  Prior to the hearing, but after the tenant served her answer, the landlord, through counsel, sent two checks to the tenant and the tenant's attorney as reimbursement for the water charges and any damages that may have flowed from the alleged violation.  The record contains two checks payable to the tenant (one sent to her; the other sent to her attorney), accompanied by cover letters from the landlord's attorney, totaling $3,615.  The first letter explained that the check for $2,850 represented two times the amount the tenant paid for

_____

[7] The temporary moratorium on nonessential evictions and foreclosures expired on October 17, 2020.  See Wells Fargo Bank, N.A. v. Sutton, 103 Mass. App. Ct. 148, 152 (2023).

[8] The tenant checked paragraphs numbered 67, 68, and 71 on a preprinted "Answer Form" that was completed with the assistance of counsel.  Paragraphs numbered 67 and 68 requested possession and money damages, respectively.  The paragraph numbered 71, entitled "The Court Should Allow Me to Stay in My Home," requested that the judge apply § 8A and allow the tenant to remain in the home either because the money owed to her on her counterclaims was greater than the amount of rent owed to the landlord or because she should be given the opportunity to pay any amount owed to the landlord within seven days.

water and sewer; the second letter explained that the check for $765 represented payment for any "potential water and sewer damages."[9]  The letter also noted that the total amount "return[ed was] equal to three times a month's rent."[10]  The record does not establish whether the tenant deposited or otherwise cashed the checks.

At the start of the hearing, the judge narrowed the disputed issues to the tenant's counterclaim for possession and request for a stay of the eviction.  The judge heard argument from each attorney.  Through counsel, the landlord agreed that she violated the water use statute, but argued that the tenant's counterclaim was moot or waived because she tendered payment to the tenant and therefore cured the violation prior to the hearing.  The tenant's attorney said that "[i]t appears that my

---

[9] The landlord also returned the tenant's security deposit plus interest notwithstanding that the tenant remained in the property.  This is not an issue on appeal.

[10] The landlord's reference to three months' rent and the tenant's late request for attorney's fees suggest that the landlord may have viewed the tenant's claim as one under G. L. c. 186, § 14, which provides for actual damages or three months' rent, whichever is greater, and attorney's fees for wrongful acts by a landlord, including "transfer[ring] the responsibility for payment for any utility services to the occupant without his [or her] knowledge or consent."  We need not, and do not, decide whether the landlord's understanding of the tenant's claim is correct because, as noted below, the tenant herself never specified her theory of how the landlord violated the water use statute, or whether that violation gave rise to a claim under G. L. c. 186, § 14.

client has been made whole, . . . there's an offer of settlement, but it doesn't mean it was accepted for consideration."  He argued that the tenant did not accept the tender and there was no mutual agreement to settle her counterclaims, specifically her defense to possession under § 8A.  Upon further questioning from the judge, the landlord's attorney acknowledged that there was no correspondence or other writing to show that the parties agreed to "full settlement" of the case.

At this point in the hearing, the judge said that he was taking the arguments on the tenant's counterclaim for possession under advisement and that the hearing would "transition to a [G. L. c.] 239, [§] 9 request for a stay."  The parties were then sworn in and testified solely on the question of whether a stay of the eviction should issue, were the landlord to be granted possession.  In a subsequent written order, the judge found that the landlord's tender of damages fully resolved the tenant's counterclaim under the water use statute, which therefore "[could] not be used to trigger a defense to possession under G. L. c. 239, § 8A," but granted a stay of the eviction until a date certain.  The judge denied the tenant's subsequent motion to stay, and judgment of possession for the landlord entered on August 30, 2021.  The tenant filed a timely notice of appeal from the judgment.

On October 27, 2021, the landlord filed a second notice to quit and thereafter, a second no-fault summary process action. Over the landlord's objection, the judge stayed the second summary process action pending disposition of the tenant's appeal of this case. On April 28, 2022, the landlord filed a petition pursuant to G. L. c. 231, § 118, with the single justice of this court seeking interlocutory relief from the stay of the second summary process action. The single justice denied the petition.

Discussion. This appeal presents issues of statutory construction, which we review de novo. See Boss v. Leverett, 484 Mass. 553, 556 (2020). More specifically, we must consider the interplay between two statutes in the context of a no-fault eviction: the water use statute and § 8A, the latter of which provides tenants with a time-limited defense against no-fault evictions in circumstances where the tenant proves that a landlord did not meet the landlord's legal obligations.[11] Here,

_____

[11] As relevant here, G. L. c. 239, § 8A, provides as follows:

"In any action under this chapter to recover possession of any premises rented or leased for dwelling purposes, brought pursuant to a notice to quit for nonpayment of rent, or where the tenancy has been terminated without fault of the tenant or occupant, the tenant or occupant shall be entitled to raise, by defense or counterclaim, any claim against the plaintiff relating to or arising out of such property, rental, tenancy, or occupancy for breach of

the tenant has not claimed a breach of the warranty of habitability as a defense to the eviction, and she did not withhold rent; she claims only a violation of the water use statute as a defense to a no-fault eviction.[12]

Section 8A "was originally enacted to provide a defense against eviction to a tenant who was not paying all or part of the rent due to uninhabitable premises."  Davis v. Comerford, 483 Mass. 164, 171 (2019).  Over time, the Legislature amended the statute "to increase the availability of counterclaims to

---

warranty, for a breach of any material provision of the rental agreement, or for a violation of any other law.

. . .

"There shall be no recovery of possession under this chapter if the amount found by the court to be due the landlord equals or is less than the amount found to be due the tenant or occupant by reason of any counterclaim or defense under this section.  If the amount found to be due the landlord exceeds the amount found to be due the tenant or occupant, there shall be no recovery of possession if the tenant or occupant, within one week after having received written notice from the court of the balance due, pays to the clerk the balance due the landlord, together with interest and costs of suit, less any credit due the tenant or occupant for funds already paid by him to the clerk under this section.  In such event, no judgment shall enter until after the expiration of the time for such payment and the tenant has failed to make such payment."

[12] Section 8A includes a provision, referred to as the rent withholding statute, which generally permits a tenant to withhold rent when a landlord fails to maintain the premises in a habitable condition if the landlord has knowledge of the violation.  That provision of the statute is not at issue in this appeal.

tenants."  Meikle v. Nurse, 474 Mass. 207, 213 (2016).  Section 8A now permits a tenant to raise "[a]ny and all counterclaims" relating to the tenancy "to offset the rent" (citation omitted). Davis, supra at 171, 172 n.16.  This is not without limitations. A counterclaim or defense under § 8A must not only relate to or arise out of a tenancy, but it must also be based on a breach of warranty, a breach of any material provision of the rental agreement, or a "violation of any other law."  See Meikle, supra at 212.  We examine each of these requirements in turn.

We conclude, and the parties agree, that the water use statute relates to a tenancy within the meaning of § 8A, as a landlord is required to supply sufficient water for the ordinary needs of the tenant.  See 105 Code Mass. Regs. § 410.180 (2005).[13]  See also Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 202 n.11 (1979) (landlord on notice it must supply adequate hot water to tenant).  General Laws c. 186, § 22, in broad terms, regulates the circumstances under which a landlord may charge a tenant for the use of water.  Among other requirements, if a landlord chooses to have a tenant pay for water, the statute requires landlords to install submeters and water conservation devices on all faucets, showerheads, and toilets.

_____

[13] See 105 Code Mass. Regs. § 410.130(A) (2023) for the current version of this regulation.

This is not required if the tenant is not responsible for payment of the water and sewer expenses of the leased premises.

We also conclude, and the parties agree, that a violation of the water use statute is a violation of "any other law" within the meaning of § 8A.  See Meikle, 474 Mass. at 212.  This is so because G. L. c. 186, § 22 (m), provides that if a landlord overcharges a tenant, or violates the State sanitary code, "the tenant shall have all rights and remedies provided under [the] law . . . including, but not limited to, the rights and remedies provided under chapters 111, 186[,] and 239."  One of the rights and remedies under G. L. c. 239 is the ability to raise as a counterclaim and defense to possession a "violation of any other law" under § 8A.  Thus, where a landlord fails to install submeters or water conservation devices as required by the water use statute, the resulting "overcharge" to the tenant can be the basis of a defense to eviction under § 8A.

This does not end the analysis because § 8A requires that a judge make certain factual findings regarding the respective amounts owed to the parties in order to determine whether a tenant is entitled to retain possession of the leased premises. If the judge finds that the amount due to the tenant equals or exceeds the amount due to the landlord, the landlord cannot recover possession.  See G. L. c. 239, § 8A, fifth par.  See also Davis, 483 Mass. at 171, citing G. L. c. 239, § 8A, first

par. (§ 8A "provides a [tenant] with a defense against a landlord's suit for possession based on . . . no-fault termination where the tenant has damages from counterclaims that equal or exceed the landlord's damages").  In addition, even if "the amount found to be due the landlord exceeds the amount found to be due the tenant," G. L. c. 239, § 8A, fifth par., the tenant can retain possession if, within seven days, the tenant pays the differential, together with interest and costs of suit, to the clerk.  See Morse v. Ortiz-Vazquez, 99 Mass. App. Ct. 474, 475 (2021).  In this way, the statute creates an incentive for landlords to comply with their obligations under the law, while providing tenants the opportunity to "cure," that is to retain possession of the premises if the landlord is made financially whole.  See id.; Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 193-194 (1973).

Having set out the elements of a § 8A counterclaim, we turn to the specifics of this case.  Although the tenant did not identify the specific provision or provisions of the water use statute that she claimed the landlord violated (nor does she identify it on appeal), the landlord (who conceded the fact of a violation through counsel) states in her brief that the only way in which she violated the water use statute was by failing to install water conservation devices and nonetheless charging the

tenant for water.  See G. L. c. 186, § 22 (c).[14]  Similarly, in her pretrial memorandum, the landlord asserted that her only violation was her failure to "install the energy saving devices as required by the statute."  Thus, for purposes of this decision, we will assume, without deciding, that the landlord violated the water use statute by failing to properly install water conservation devices.

The question for the judge (and for us on appeal) then becomes what impact that violation of the water use statute has on the tenant's claim for possession.  The answer to that question depends on the findings required by § 8A, fifth par., regarding the amounts owed on each side of the relationship.

A landlord is precluded from recovering possession "if the amount found by the court to be due the landlord equals or is less than the amount found to be due the tenant or occupant by reason of any counterclaim or defense under this section."  G. L. c. 239, § 8A, fifth par.  The landlord argues that because she tendered full payment to the tenant under any theory of damages, "there was no 'amount' that the [judge] could find 'to be due the tenant'" on her counterclaim and therefore, upon tender of the damages to the tenant, the tenant's § 8A defense to possession was moot.  The landlord also argues that the

_____

[14] See also G. L. c. 186, § 22 (t); 105 Code Mass. Regs. § 410.130(C)(2) (2023).

tenant's acceptance of the payments without a reservation of rights resolved the tenant's counterclaim in full.  The tenant counters that there is no evidence that she accepted the payments, and that, even if the tender would have "made [her] whole" monetarily, there was no "mutual agreement to settle her counterclaim."

Evidence was required to permit the judge to resolve these fact-based questions, and to make appropriate findings.  But certain critical findings were not made, presumably because the judge heard arguments of counsel on this issue and therefore there was no evidentiary record.  The judge could not, on this record, make the necessary findings regarding the amount of the tenant's damages resulting from the water use statute violation or the relationship of that amount to the amount tendered by the landlord.  It therefore follows that he could not determine whether the amount owed by the landlord equaled or exceeded the amount owed by the tenant (although everyone agreed the amount owed by the tenant was zero).  Furthermore, the record did not permit the judge to determine whether the tenant intended to release or waive her counterclaim in its entirety by accepting the landlord's tender.[15]  This is particularly important because

---

[15] While proceeding based on arguments of counsel is usually an expedient way to adjudicate a busy summary process session where many litigants are self-represented, especially where some of the issues do not appear to be in dispute, the procedure is

a settlement agreement must include all material terms and reflect the parties' mutual intent to be bound by it. See Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000) ("It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement"). Cf. Community Bldrs., Inc. v. Indian Motocycle Assocs., Inc., 44 Mass. App. Ct. 537, 548 (1998) (when material facts are not in dispute, intent is question of law). Finally, there was no evidence to help the judge determine whether, as the landlord claimed (and continues to claim), the tenant cashed the checks or, as the tenant now claims, she merely held them in a safe.

The judge apparently concluded that such findings were not necessary because, given counsel's representation that the tenant had been "made whole," the tenant's counterclaim was moot. This was error because the judge failed to recognize that the tenant's counterclaim carried two potential forms of relief at the time it was asserted: money damages and a defense to possession under § 8A. Although the tenant's acknowledgement

---

not ideal where, as here, there are important factual issues that need to be resolved. See Mahoney v. Mahoney, 65 Mass. App. Ct. 537, 540-541 (2006) (under certain circumstances judge may properly rule without evidentiary hearing, but typically in cases where material facts are not in dispute).

that she had subsequently been made financially whole arguably reflected that her claim for damages was moot, it did not moot her claim for possession. This is because, as we have set out above, § 8A permits the tenant to retain possession if the amount she is owed by the landlord is greater or equal to any amount owed to the landlord. Here, this must have been the case because the tenant owed nothing to the landlord, and the landlord owed either nothing or some amount of money to the tenant. And, in any event, as described above, even if the amount the tenant owed the landlord exceeds the amount owed by the landlord to the tenant, the tenant has a seven-day period in which to cure the deficiency and retain possession.

The landlord's tender therefore did not preclude the tenant from asserting a § 8A defense to possession based on the landlord's water use statute violation. The tenant should have been given the opportunity to prove her defense. The relevant measure of her damages then would have been what she was owed on the counterclaim as proven, either through evidence adduced at trial or by stipulation. It bears mentioning that even if a landlord stipulates to the amount of the tenant's damages, whether with or without a physical tender of money, such a stipulation alone does not resolve the tenant's claim for possession; rather, the stipulated sum will establish the amount owed to the tenant for purposes of determining whether the

tenant retains (or must cure any deficiency to retain) possession. Thus, that the landlord here physically tendered the money to the tenant did not moot that part of the tenant's counterclaim that sought possession. This is true even if the amount of the landlord's tender equaled the amount of the tenant's monetary damages (or possibly exceeded it). Cf. Lynn v. Murrell, 489 Mass. 579, 582 (2022) (party no longer has personal stake in case where court can order "no further effective relief" [quotation omitted]).[16]

To conclude otherwise would run afoul of the plain language of § 8A. The Legislature did not provide a cure provision for landlords as it did for tenants, and thus a tenant's § 8A defense is not precluded by a landlord's unilateral tender of damages subsequent to the filing of a counterclaim for possession. This is so because "[w]e do not read into [a] statute a provision which the Legislature did not see fit to put

---

[16] For similar reasons, the judge could not have resolved the case based on a judicial admission, as posited by Justice Meade in dissent. See post at        (Meade, J., dissenting). The tenant argued both in her pretrial memorandum and at the hearing, that the landlord's tender was no bar to the tenant's raising the water use statute violation as a defense to possession under § 8A. The tenant plainly did not "cause[] the judge to understand" that the claim for possession was "waived or abandoned." Dalton v. Post Publ. Co., 328 Mass. 595, 599 (1952). To the contrary, the judge recognized that whether the case would "be adjudicated under [§] 8A" would depend on how he ruled on the tenant's argument that the claim for possession was still a live issue.

there, nor add words that the Legislature had an option to, but chose not to include" (citation omitted).  Massachusetts Insurers Insolvency Fund v. Smith, 458 Mass. 561, 567 (2010).  See Boehm v. Premier Ins. Co., 446 Mass. 689, 691 (2006) (Legislature presumed to know preexisting law).  In fact, by reading into the statute a landlord's unilateral right to cure after the filing of a summary process complaint, we would be undermining the Legislature's efforts to strengthen a tenant's right to avoid eviction by a landlord in violation of the housing-related statutes.  Landlords could simply buy themselves free of the consequences of their failure to follow the law by offering the money due their tenants, at least the tenants who become aware of their rights and defend or advance a counterclaim to their evictions.

To be clear, we are not suggesting that the landlord here acted with bad intent, as opposed to making (and then trying to cure) an honest mistake.  But § 8A's mandate applies to all landlords, including those less scrupulous than the landlord here appears to have been.  Take, for example, the more typical case arising in a rent withholding situation.  As mentioned, § 8A authorizes a tenant to withhold rent when a landlord fails to maintain the property in habitable condition.  See Davis, 483 Mass. at 171; Boston Hous. Auth., 363 Mass. at 193.  If a landlord, with knowledge of the conditions, fails to make the

necessary repairs and instead brings an eviction action seeking to terminate the lease early based on nonpayment of rent, the tenant would be entitled to retain possession if she can prove a breach of the warranty of habitability or a related defense or counterclaim. This is the "defensive remedy" that the Legislature provided to tenants by enacting § 8A. Boston Hous. Auth., 363 Mass. at 193. Allowing landlords to unilaterally moot that remedy by simply tendering the amount of damages owed for the breach, after the landlord filed a summary process action, would eviscerate the "original purpose of § 8A" -- "to grant[] the tenant the right to withhold rent in order to aid effective enforcement of State Sanitary Code regulations." Davis, supra, quoting Boston Hous. Auth., supra.

While the dissenting opinions assert that § 8A works an inequity to the landlord in this particular case, none of them explain how we can reach a contrary result without undermining the purpose of the statute in future cases. A tenant in a rent withholding case can agree that a landlord's tender has made her whole for her monetary damages while still preserving a claim under § 8A to stay in the premises for the remainder of her lease. This is consistent with the Legislature's intent in enacting § 8A and with the uncontroversial notion that a settlement of one claim is not a settlement of all claims. To the extent that the dissenting justices advocate for a different

rule in the no-fault context, that is a question for the Legislature, which has seen fit to expressly include no-fault evictions within the scope of § 8A. See Adoption of Daphne, 484 Mass. 421, 424 (2020), quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006) ("Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense").

Nor is there merit to the view of the dissenting justices that § 8A does not provide a defense to possession where the tenant is owed no amount of money because of a tender by the landlord. This is another way of saying that once a landlord commences a summary process action, the landlord can moot a tenant's claim to possession by tendering money, as that would contravene the basic purpose of § 8A. It is also not true that the tenant must prove that she is owed an amount greater than that owed to the landlord. See post at          (Meade, J., dissenting). Again, § 8A permits the tenant to retain possession if there is no net money owed to either party and, where the tenant owes money, she can still retain possession upon payment of the difference within seven days. Indeed, this would be the situation anytime a tenant raises a § 8A claim by defense, rather than by counterclaim, because a defense "cannot

provide [an] affirmative recovery."[17]  HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 330 n.17 (2022).  The word "defense" in § 8A has meaning; it is not superfluous.  See Casa Loma, Inc. v. Alcoholic Beverages Control Comm'n, 377 Mass. 231, 234 (1979) ("It is a common tenet of statutory construction that, wherever possible, no provision of a legislative enactment should be treated as superfluous").

For conditions-based claims such as breach of warranty, it is § 8A itself that makes the claim a defense to possession and whether the tenant retains possession depends on the accounting contemplated by § 8A, fifth par.  See Davis, 483 Mass. at 173 n.18 ("A breach of the warranty of habitability is not a defense to eviction; it is a claim in the nature of abatement or damages" [citation omitted]).  Thus, as amicus Volunteer Lawyers Project correctly observes, the inclusion of "defense" in § 8A demonstrates that a tenant can retain possession even if there is no net amount of money owed to her.[18]

---

[17] For this reason, where a tenant raises a § 8A claim by defense, there would be no amount of damages for a landlord to tender.  The position of the dissenting justices would thus create the perverse result that a landlord would be able to moot a § 8A claim by tendering damages, but only where the tenant exercised her right to assert the claim by counterclaim.

[18] According to the amicus brief, tenants commonly raise only defenses under § 8A because counterclaims (but not defenses) are waived if not included in a timely answer.  See Morse, 99 Mass. App. Ct. at 481.  Section 8A expressly allows

Therefore, where, after the filing of a summary process action, a landlord tenders payment without obtaining a clear release or waiver from the tenant, a judge must still adjudicate the tenant's counterclaim for possession under § 8A.[19]  However, "a tenant who retains possession does not enjoy that right in perpetuity.  The statute does not impose an obligatory tenancy on the landlord."  Meikle, 474 Mass. at 214.  Rather, "the tenant's right to retain possession [is] a time-limited equitable remedy for the particular conduct underlying the tenant's defense or counterclaim."  Id.  In the case of a no-fault eviction involving a tenancy at will, if the tenant retains possession due to a violation, "[n]othing in the statute prevents the landlord from bringing a second summary process action for possession after he or she has remedied the violation," once a judgment has entered in the first case.  Id.[20]

---

tenants to raise their claims "by defense or counterclaim."
G. L. c. 239, § 8A, first par.

[19] The doctrine of waiver is disfavored in the context of landlord-tenant disputes.  See Morse, 99 Mass. App. Ct. at 485 n.25.

[20] Justice Ditkoff notes that in the second summary process action, the tenant has raised retaliation as a defense for the tenant's prevailing on her § 8A defense in the first action.
See post at          (Ditkoff, J., dissenting).  It is difficult to see how that retaliation defense would be successful, however, given the pronouncement in Meikle, 474 Mass. at 214, that the Legislature intended § 8A to be a "time-limited" remedy and that a landlord in a no-fault eviction action is entitled to bring a second action once she has remedied the original

     To sum up, in future proceedings involving no-fault evictions or evictions for nonpayment of rent, if a tenant raises a defense or counterclaim within the meaning of § 8A, the judge must first determine whether the landlord is liable on the defense or counterclaim.  If the judge so finds, or the landlord concedes liability, the judge must then determine the respective amounts due to each party.  A landlord's tender of damages after commencement of a summary process action will not moot the tenant's claim for possession, absent a clear release or waiver of that claim by the tenant.  Once the judge determines the amount that each party is owed, the judge shall then perform the accounting contemplated by § 8A, fifth par.  If the tenant proves her defense or counterclaim and is owed more than the amount determined to be owed to the landlord (or the amount she is owed equals what is owed to the landlord), the tenant is entitled to retain possession.  If the tenant proves her defense or counterclaim but is owed less than the amount determined to be owed to the landlord, the tenant will have seven days from receipt of written notice thereof to pay the balance to the clerk (cure) and if she does cure, the tenant is entitled to retain possession; if the tenant does not cure, the landlord is

---

violation.  In any event, the hypothetical possibility that a tenant might raise a retaliation defense does not permit us to depart from Meikle or disregard the language and purpose of § 8A.

entitled to possession.[21]  If the tenant retains possession under

§ 8A, the landlord may bring a subsequent summary process

action, although if the landlord has not yet remedied the

violation underlying the tenant's successful defense or

counterclaim, the tenant may again raise that violation through

a defense or counterclaim in the subsequent action.

Conclusion.  Accordingly, we vacate the judgment.  Where a

case has been resolved prematurely on procedural grounds, we

typically remand for further proceedings.  Here, on the tenant's

claim for money damages, a remand is necessary to allow the

judge to enter factual findings on the amount of those damages,

as the trial record (and the appellate record) is bereft of the

necessary evidence on that question.  And, because the landlord

claims that the tenant cashed the checks and the tenant claims

that the checks are in a safe, the judge must determine whether

or not the tenant was in fact compensated for her damages.[22]

On the tenant's claim for possession, under the unusual

circumstances presented where the tenant, who was entitled only

---

[21] We also recognize that "[n]othing in the statute prevents
the landlord from bringing a second summary process action for
possession after [the landlord] has remedied the violation of
the security deposit statute.  Also, even where the tenant
agrees to pay the amount due the landlord to exercise the right
to possession, the landlord may thereafter commence a summary
process action."  Meikle, 474 Mass. at 214.

[22] We note that the checks were drawn in 2021 and the record
does not indicate whether they are currently negotiable.

to a time-limited remedy of possession, has in fact retained possession during the time this appeal was pending, the judge may immediately on remand, with the landlord's agreement, issue a partial judgment in the tenant's favor for possession, and nothing herein shall preclude the judge from dissolving the stay of the second summary process case so that the second action may proceed as soon as judgment for possession is entered in this case.[23]  See Meikle, 474 Mass. at 214.  This approach is consistent with the Uniform Summary Process Rules which intend for these proceedings to be "just, speedy, and inexpensive." Cambridge St. Realty, LLC. v. Stewart, 481 Mass. 121, 133 n.12 (2018), quoting Rule 1 of the Uniform Summary Process Rules (1980).  The judge shall also endeavor to make the findings described above expeditiously, and thereafter shall enter a new judgment on damages consistent with this opinion.[24]

---

[23] Justice Ditkoff observes that, were the landlord to prevail in the second action, the tenant could retain possession even longer by appealing from that judgment.  See post at        (Ditkoff, J., dissenting).  But the disposition we reach is consistent with the process contemplated by Meikle, 474 Mass. at 214, which we are of course bound to follow.  Also, if the tenant files such an appeal, the landlord could move to expedite, in which event the unusual procedural history of this case would bear on whether the motion should be allowed.  See Ott v. Boston Edison Co., 413 Mass. 680, 684 (1992) ("Our appellate system has the capacity to move rapidly when circumstances warrant . . .").  See also Rules 3 and 5 of the Uniform Summary Process Rules (2021).

[24] While there was some discussion at oral argument as to whether notice to the landlord is required under § 8A, second

_So ordered._

---

par., in a no-fault eviction, that issue was not raised in the Housing Court or briefed on appeal and is therefore not properly before us.  Justice Englander disagrees, invoking the principle that we can affirm on any ground apparent in the record.  But that principle has limits, including that the ground apparent in the record must "support[] the result reached in the lower court."  _Gabbidon_ v. _King_, 414 Mass. 685, 686 (1993).  The judge did not resolve the tenant's § 8A defense "on the ground that it was not proved at trial."  _Post_ at          (Englander, J., dissenting).  The tenant did not have the opportunity to prove her defense at trial because the judge concluded that the tender precluded her from doing so.  Assuming the counterclaim here was "based on any allegation concerning the condition of the premises or the services or equipment provided therein," G. L. c. 239, § 8A, second par. -- rather than on unlawfully charging the tenant for water when (permissibly and lawfully) no conservation devices were installed, see G. L. c. 186, § 22 (c) -- and further assuming the knowledge requirement applied, even though the tenant here was never in arrears in her rent, based on the way that the judge framed the issues at the hearing, there was no opportunity for the tenant to demonstrate the landlord's knowledge.  We are unaware of any authority that would allow us to take a claim that was disposed of by a judge on procedural grounds (here, mootness) and resolve it on the merits on appeal, without an appropriate evidentiary record that the premises lacked the required conservation devices.  It is particularly unwise to do so here, where the issue was not briefed on appeal and involves a novel question of statutory interpretation.

MEADE, J. (dissenting, with whom Neyman, Ditkoff, Singh, Englander, Walsh, Brennan, and Hodgens, JJ., join).  Cassandra Ferreira (Ferreira or landlord) just wants to live in her own home.  She had rented it to Laural Charland (tenant), and later wished to regain possession.  In a no-fault summary process action, the tenant asserted a counterclaim alleging a violation of the water use statute.  See G. L. c. 186, § 22.  The landlord realized her mistake and, prior to trial,[1] paid the tenant not just the amount owed for the water and sewer damages, but double that amount, which was equal to more than three times the tenant's monthly rent.  While not quite devolving to the level of Charles Dickens's Bleak House, this case could easily be described as Kafkaesque.  The majority concludes that even though counsel for the tenant admitted that the tenant had been made whole (and then some), she gets to remain in the home, and the only solution for the landlord is more litigation.  As I cannot agree, I respectfully dissent.

The issue in this appeal from a Housing Court judgment granting the landlord possession of her home in Ludlow is whether the landlord's tender and the tenant's acceptance of compensation for the tenant's counterclaim under G. L. c. 186, § 22, precluded the tenant from asserting G. L. c. 239, § 8A

---

[1] For simplicity's sake, I use the word "trial" even if the matter was adjudicated after a hearing.

(§ 8A), as a defense at trial.  A Housing Court judge concluded that they do because the landlord's tenders "were knowingly accepted by the tenants without any reservation of rights."  The only tenant to appeal, Laural Charland, claims error, arguing that the landlord's tenders did not settle her counterclaim and the judge misinterpreted § 8A.  I disagree.

We analyze issues of statutory construction de novo.  See Meikle v. Nurse, 474 Mass. 207, 209 (2016).  We do so "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished" (citations omitted).  Id. at 209-210.  We construe the statute "as written, in keeping with its plain meaning so as to give effect to each word." Lawrence v. Osuagwu, 57 Mass. App. Ct. 60, 63 (2003).  At the same time, "we will not adopt a literal construction of a statute if the consequences of doing so are absurd or unreasonable, such that it could not be what the Legislature intended." Meyer v. Veolia Energy N. Am., 482 Mass. 208, 212 (2019), quoting Cianci v. MacGrath, 481 Mass. 174, 178 (2019).

Section 8A, fifth par., precludes a landlord from recovering possession "if the amount found by the court to be due the landlord equals or is less than the amount found to be

due the tenant or occupant by reason of any counterclaim or defense under this section." "[A] tenant may retain possession only if two conditions are met: (1) the tenant prevails on a counterclaim or defense brought 'under this section'; and (2) the damages on that defense or counterclaim exceed the amount due the landlord." Meikle, 474 Mass. at 211.

The tenant's contention that she may defeat a complaint for possession merely by demonstrating the landlord's violation of law is not supported by the statute. A tenant is entitled to possession under § 8A "because her damages exceed[] those recovered by [the landlord]" (emphasis added), Lawrence, 57 Mass. App. Ct. at 63, not regardless of whether they do. "The statute does not impose an obligatory tenancy on the landlord." Meikle, 474 Mass. at 214.

Contrary to the majority's belief, at least for the purposes of this case, the record sufficiently established the tenant's damages.[2] More importantly, the record established that the landlord, prior to trial, paid those damages.[3] The majority

---

[2] The landlord's attorney paid the tenant a total of $3,615 in two checks. The first check represented two times the amount the tenants paid for water and sewer, and the second check represented payment for any "potential water and sewer damages."

[3] The tenant's claim for attorney's fees, raised for the first time on appeal, is waived. See McLaughlin v. American States Ins. Co., 90 Mass. App. Ct. 22, 33 n.17 (2016).

holds that this does not matter, but I believe that it does for two reasons.

First, the tenant's claim under the water use statute is moot. "[L]itigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome." Blake v. Massachusetts Parole Bd., 369 Mass. 701, 703 (1976). "A party no longer has a personal stake in a case where a court can order no further effective relief" (quotation and citation omitted). Lynn v. Murrell, 489 Mass. 579, 582 (2022). The sequence of events illustrates that has occurred here.

In March 2021, the landlord's attorney sent the tenant a letter containing a personal check from the landlord labeled "water + sewer return." According to the letter, the check "represent[ed] two times the amount you paid for water and sewer charges during your occupancy." In May, after receiving a response from the tenant's limited assistance representation attorney, see Morse v. Ortiz-Vazquez, 99 Mass. App. Ct. 474, 476 n.7 (2021), the landlord's attorney sent the tenant's attorney a second letter containing a personal check from the landlord labeled "additional water + sewer." That letter said the check "represent[ed] a return of any potential water and sewer damages under the law that would make the return equal to three times a month's rent." Before trial, counsel for the tenant claimed that these tenders did not settle the tenant's counterclaim even

though "[i]t appears that my client has been made whole," because § 8A "still provides for the tenant to be left with possession."  At the trial, no evidence was elicited on the subject other than the checks and letters.

The majority takes issue with the legal effect of the tenant's counsel's representation of the fact that the tenant had been "made whole" prior to trial.  Polishing off the niceties of contract and settlement law, the majority claims that the absence of a release, or a settlement agreement which contains all the material terms and reflects the parties' mutual intent to be bound by it, renders counsel's words without effect.  I disagree.  While those absent components might promote clarity in the future, we must evaluate what the judge did here based on the information that was available to him at the time, and not on what might have been.  For me, what the judge acted upon was a judicial admission, which "conclusively determine[s] an issue [and] [it] relieve[s] the other party of the necessity of presenting evidence on that issue" (citation omitted).  General Elec. Co. v. Board of Assessors of Lynn, 393 Mass. 591, 603 n.8 (1984).  See Beaumont v. Segal, 362 Mass. 30, 32 (1972).  See also Mass. G. Evid. § 611(g)(1) note (2023).  In fact, a judicial admission does not require an agreement between the parties, and it may arise whenever "a party causes the judge to understand that certain facts are admitted or that certain

issues are waived or abandoned."  Dalton v. Post Publ. Co., 328
Mass. 595, 599 (1952).  See Wood v. Roy Lapidus, Inc., 10 Mass.
App. Ct. 761, 765 (1980) ("a judicial admission is a proposition
of fact in the form of acts or declarations during the course of
judicial proceedings which conclusively determine an issue").
No more was required, and the judge was entitled to rely on
counsel's representation.[4]

Here, as the judge was entitled to conclude, the landlord
tendered all the damages asserted under G. L. c. 186, § 22, and
the tenant accepted those damages.  Those findings are not
clearly erroneous.  See Meikle, 474 Mass. at 208; Demoulas v.
Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997).  Contrast
Henry v. Bozzuto Mgt. Co., 98 Mass. App. Ct. 690, 697 (2020)
(tenant rejected tendered offer of settlement).[5]

Contrary to the majority opinion and the tenant's claim,
where the landlord has satisfied the tenant's claim, the tenant
cannot use that claim to trigger a defense to possession under

---

[4] For the same reason, the majority's assertion that "the
tenant did not have the opportunity to prove her counterclaim at
trial," ante at      , is meaningless, as the matter had been
settled.  The judge was not required to take evidence on an
issue that no longer remained a controversy.

[5] The tenant mistakenly relies on our decision in Henry,
which involved the security deposit statute, see G. L. c. 186,
§ 15B, not G. L. c. 239, § 8A, and where the tenants rejected
the landlord's settlement offers.  See Henry, 98 Mass. App. Ct.
at 697.

§ 8A.  In so concluding, I have not read something into the statute that the Legislature did not see fit to include. Rather, I have endeavored to construe the statute, in a reasonable manner, so that it makes sense and reflects what the Legislature enacted.

More specifically, under § 8A, a valid defense to a landlord's claim of possession requires a finding by the judge of some amount of money the landlord owes to the tenant, either in an amount equal to what the tenant owes to the landlord or greater than what the tenant owes to the landlord.  G. L. c. 239, § 8A, fifth par.  In fact, § 8A, fifth par., states in part, "[t]here shall be no recovery of possession under this chapter if the amount found by the court to be due the landlord equals or is less than the amount found to be due the tenant or occupant by reason of any counterclaim or defense under this section" (emphasis added).  The Legislature's use of the above-emphasized present tense phrases indicates an amount of money that has, as of yet, not been paid to the tenant.

Here, the judge found that the landlord did not owe the tenant any amount as the landlord had already paid the tenant prior to trial.  Having been compensated for her counterclaim under G. L. c. 186, § 22, the tenant no longer had a personal stake in the outcome, which rendered her claim moot.  See Henry, 98 Mass. App. Ct. at 697-698, citing Joiner v. SVM Mgt., LLC,

2020 IL 124671 ¶¶ 44-46 ("'tender,' where defendant produces entire amount owed and admits liability, eliminates any live controversy and requires dismissal of plaintiff's claims").  Of course, if the landlord had tendered an amount that did not fully satisfy the tenant's claim, or if the tenant genuinely disputed the amount of damages owed, the tenant would have had a valid counterclaim under § 8A and could retain possession at least until the counterclaim was adjudicated.

The majority claims that the case is not moot because even though the landlord tendered the money to the tenant, that fact "did not moot that part of the tenant's counterclaim that sought possession." Ante at        .  However, that assertion begs the very question this case presents.  By its explicit terms, § 8A does not create a free-floating right to claim possession.  Rather, the tenant's claim for possession, i.e., her defense against eviction, was contingent upon (in this case) proof of the water use statute violation and proof that the tenant was due an amount greater than that due the landlord.  See G. L. c. 239, § 8A.  Once the landlord settled the water use statute violation,[6] the tenant's legal claim to possession no longer

---

[6] The majority's illustration of its concern relative to a rent withholding case sheds no light on the present case.  In that circumstance, the tenant may very well have right to possession under a lease once the rent dispute is settled.  But this case involves a water use statute violation (which was settled) in the context of a no-fault eviction, and no time

existed.  Indeed, there was no finding of any amount due to the tenant because there was no amount due.

The second reason why it matters that the landlord paid the damages prior to trial is that we should encourage settlements to promote judicial economy and not perpetuate needless litigation.  Indeed, the Legislature enacted § 8A to encourage settlements and to avoid litigation.  See Wolfberg v. Hunter, 385 Mass. 390, 398-399 (1982).  This promotes the rights of both tenants and landlords.  See id.  Despite this, the majority supports its reading of § 8A by claiming that if the Legislature had intended to permit landlords to cure claimed violations, then "[l]andlords could simply buy themselves free of the consequences of their failure to follow the law by offering the money due their tenants, at least the tenants who become aware of their rights and defend or advance a counterclaim to their evictions."  Ante at      .  But the majority from LaMancha tilts at windmills.[7]

Ferreira is not a professional landlord, and the record fails to reflect that anything nefarious occurred here.  After our Commonwealth's COVID-19 eviction moratorium ended, the

remained on the tenancy at will.  In that circumstance, the tenant had no right to remain once her case was settled.

[7] M. de Cervantes, Don Quixote (P. A. Motteaux trans., Wordsworth Editions, 1997).

landlord served a no-fault notice to quit to terminate the tenant's tenancy at will because she wanted to live in her home again.  The tenant has been made whole after being compensated for her water use claim.  But that good deed will not go unpunished.  Without enduring yet another summary process action, I believe Ferreira should get to live in her own home.  Because the majority's unreasonable construction of § 8A means that is not going to happen, see Meyer, 482 Mass. at 212 (statute should not be construed in manner that is "absurd or unreasonable"), I respectfully dissent.

DITKOFF, J. (dissenting, with whom Meade, Neyman, Singh, Englander, Walsh, Brennan, and Hodgens, JJ., join). Cassandra Ferreira lived in the subject property for over three years. When she decided to move in with her boyfriend in 2016, she rented the property to the tenants for less than her carrying costs. Her relationship fell victim to the stresses of the pandemic, however, so she left her boyfriend and informed the tenants in July 2020 that she needed the property for herself. For the same reason, her ballet studio ceased to be profitable, and she was in financial straits. She sent the tenants a notice to quit on October 20, 2020, three days after the Massachusetts pandemic eviction moratorium ended, see Wells Fargo Bank, N.A. v. Sutton, 103 Mass. App. Ct. 148, 152 (2023), terminating the tenancy effective December 3, 2020.

When the tenants refused to leave, Ferreira became homeless, moving from couch to couch in the houses of family or friends. Mostly, she stays on a couch in the unheated basement of her parents' home. She suffers from depression and anxiety, both of which have been exacerbated by her living situation. She also is being treated for a medical condition and her doctor opined that "[i]t will be medically necessary for [Ferreira] to have a stable living situation in order to have a successful recovery." That medical recommendation has not been followed.

The legal issue before us is, actually, fairly simple.  The statute states that the landlord may not recover possession if the landlord's financial recovery "equals or is less than the amount found to be due the tenant or occupant by reason of any counterclaim or defense under this section" (emphasis added).  G. L. c. 239, § 8A, fifth par.  Similarly, the landlord may not recover possession if the landowner's financial recovery "exceeds the amount found to be due the tenant or occupant" (emphasis added), and the tenants promptly pay the balance.  G. L. c. 239, § 8A, fifth par.  Either way, the statute requires that there be an "amount found to be due the tenant."  See Meikle v. Nurse, 474 Mass. 207, 209 (2016) (court found that $1,304.61 was due to tenant).  "If the statutory language is clear and unambiguous, it is 'conclusive as to legislative intent.'"  Patel v. 7-Eleven, Inc., 489 Mass. 356, 362 (2022), quoting Monell v. Boston Pads, LLC, 471 Mass. 566, 575 (2015).  Accord Miekle, supra at 210.

Here, the judge did not find any amount to be due the tenant challenging the eviction.  He could not make such a finding because the tenant never asked the judge to find any amount due to her nor produced any evidence of what that amount due would be.[1]  The tenant's ability to do so was not foreclosed

---

[1] As if to underscore the point, no party or amicus has briefed what the measure of damages would be for the violation

prematurely; rather, the tenant explicitly agreed to the judge's proposal that the water use issue be decided on legal arguments without the provision of evidence.  This was because the tenant had already stated in writing that Ferreira had reimbursed her for all water charges, and the tenant affirmatively agreed at trial that no amount was due to her.

That should be the end of the legal analysis.  The tenant and the Attorney General invite us to rewrite the statute to excise "the amount found to be due" language and instead change the statute to read, in the Attorney General's words, "where a tenant prevails on a counterclaim and no net money is due to the landlord, 'there shall be no recovery of possession,'" regardless of whether there is an amount due to the tenant. This is well beyond our scope of authority as judges, and that is enough to reject it.  See Dinkins v. Massachusetts Parole Bd., 486 Mass. 605, 613 (2021), quoting Commonwealth v. Newberry, 483 Mass. 186, 195 (2019) ("[W]e may not rewrite the . . . statute to contain language the Legislature did not see fit to include").  But I fail to see why we would want to do this, even if it were within our judicial authority.

_____

here -- failure to install water conservation devices, G. L. c. 186, § 22 (c).  Is it the amount of the water charges?  A multiple of the water charges?  The amount the water charges would have been less if Ferreira had installed the water conservation devices?  We have no idea, because everybody agrees that nothing is due to the tenant here.

The tenant and the Attorney General assure us that there is nothing to worry about, because "a landlord can file a new summary process action quite immediately after judgment is entered in the first summary process action."  See Meikle, 474 Mass. at 214 ("Nothing in the statute prevents the landlord from bringing a second summary process action for possession after he or she has remedied the violation").  File, yes, but obtain possession, no.

Ferreira filed a new summary process action approximately four months after judgment was entered in the first summary process action here.  The tenant pleaded the defense of retaliation, asserting that she "is entitled to a presumption of retaliation because Plaintiff caused service of the Notice to Quit and filed the instant action within six months of Ms. Charland's filing of the notice of appeal."  The tenant then successfully argued to the Housing Court that "[i]t would be inconsistent with the intent of G.L. c. 239, §8A and with general principles of justice and equity to allow the Plaintiff to subvert the Defendant's appeal and to evict her on a no-fault basis simply by commencing a second summary process action."[2] Ferreira asked this court for assistance, and a single justice

---

[2] Lest I be accused of glossing over the pendency of the current appeal, the tenant disclaimed at oral argument any belief that the pendency of the current appeal was necessary for this argument.

denied relief and left Ferreira without the remedy of a second summary process action.

As we know from the existing stay of the second summary process action, the second summary process action will likely remain stayed while the appeal from the judgment on remand is decided (expedited or not).  Even when (or if) that second summary process action resumes (or a third is initiated), the tenant enjoys the obvious defense that the new summary process action was retaliation for appealing the first summary process action.  Under G. L. c. 239, § 2A, the tenant enjoys a rebuttable presumption of unlawful retaliation that can be defeated only by "clear and convincing evidence."  See Youghal, LLC v. Entwistle, 484 Mass. 1019, 1023-1024 (2020).  Even if Ferreira eventually prevails against this defense, she will remain homeless on a couch in an unheated basement unable to obtain possession while the appeal of that second summary process judgment is pending.

At some point, Ferreira may well just give up and accept her judicially-imposed plight.  Lest I be accused of melodrama, amicus Volunteer Lawyers Project tells us that this occurs "not infrequently," as a landlord "simply changes its analysis of the costs and benefits of eviction."  Apparently, for amicus, this is a feature, not a bug, of the tenant's proposed interpretation of the statute.

Finally, the Attorney General suggests that this rewriting of the statute is necessary to address "the Commonwealth's current rental housing crisis and significant shortage . . . of affordable rental units."  Ferreira is not proposing to leave the property empty, however; she merely wants to end her homelessness and live there.  Between Ferreira and the tenant, this is truly a zero-sum game.

But, in the larger sense, the Attorney General has it backwards.  Ferreira certainly wishes she had left the property vacant when she moved in with her boyfriend.  In the (admittedly unlikely) event that she recovers possession, there is no chance she will ever rent it out again even if she subsequently vacates it.  More important, our decision adds to the steady judicial drumbeat warning every small residential landowner that, whatever you do, do not rent out your property.  There are many reasons for the housing crisis in Massachusetts, but we would do well to acknowledge that our landlord-tenant jurisprudence is one of them.

I respectfully dissent.

ENGLANDER, J. (dissenting, with whom Meade, Neyman, Singh, Ditkoff, Walsh, Brennan, and Hodgens, JJ., join).  I join the dissents of both Justice Meade and Justice Ditkoff.  The result the majority reaches today is both inequitable and unsupported by any facts shown at trial, and hence the judgment granting possession to the landlord should not be vacated.  I write separately, however, because the majority's opinion discusses and resolves important legal issues regarding the raising of defenses and counterclaims under G. L. c. 239, § 8A (§ 8A), but in doing so fails to account for context -- a so-called "no-fault" summary process action.  The result is that the majority appears to endorse a legal scheme for defenses or counterclaims in such cases that does not require proof that the landlord had advance knowledge (i.e., notice) of the condition or violation that forms the basis for the tenant's defenses.  The knowledge/notice requirement is particularly pertinent in this case, because here there is no suggestion in the record that the tenant gave advance notice (or that the landlord "knew") of a violation of the water use statute, G. L. c. 186, § 22, before the tenant raised it as a defense to the summary process action.

In a footnote at the end of its opinion, the majority attempts to dismiss the lack of knowledge/notice issue on several grounds, including that it is "not properly before us." I disagree.  This is an appeal from a judgment that rejected the

tenant's § 8A defense on the ground that it was not proved at trial.[1]  We can affirm on any ground supported by the record, Gabbidon v. King, 414 Mass. 685, 686 (1993), and here, it is important to address § 8A's knowledge/notice requirement for two reasons, which I discuss in more detail below:  (1) the knowledge/notice requirement is an integral component of § 8A, yet the majority's opinion seems to suggest that the requirement does not even apply in no-fault summary process actions, and (2) there is no evidence that the landlord had advance knowledge in this case, and in those circumstances, I do not believe the tenant can prevail on her defense.

1.  The structure of § 8A.  Looking at the structure of § 8A, the first paragraph establishes the tenant's right to raise defenses or counterclaims "for breach of warranty, for breach of any material provision of the rental agreement, or for a violation of any other law."  This ability to raise defenses to a claim for possession applies in no-fault actions as well as

---

[1] The majority contends that the decision below rested on a "procedural ground," and that the tenant was not "given the opportunity to prove her defense."  Ante at      .  To the contrary, I read the record, and the judge's order, as deciding the case on the merits -- after hearing from the tenant's counsel, the judge found that the tenant could not prove the element of damages, because the landlord's payments "satisfied and resolved the tenants' claim."  Particularly where the majority relies entirely on argument of counsel for the tenant's proof of the alleged violation of law, I cannot see a principled basis for the majority's suggestion that we should not consider the evidence as to the other elements of the tenant's defense.

to nonpayment situations -- it applies to actions "brought pursuant to a notice to quit for nonpayment of rent, or where the tenancy has been terminated without fault of the tenant or occupant."  G. L. c. 239, § 8A, first par.

But although the first paragraph of § 8A expressly refers to no-fault summary process actions, it is evident that the remaining paragraphs of § 8A were not written with such actions in mind.  Rather, the remaining paragraphs assume the context is a claim for possession against a tenant who is not paying (or is withholding) the rent.  See Bank of Am., N.A. v. Rosa, 466 Mass. 613, 619 (2013) (§ 8A's "legislative history suggests that it was intended to provide a defensive remedy [rent withholding]").  In that context the tenant has a possessory, leasehold interest in the property, which would continue if they paid the rent and otherwise complied with the lease.  This is to be distinguished from a no-fault summary process action (for example, where the lease has expired), in which the tenant has no claim to an ongoing possessory interest in the property, but rather was terminated without allegation that the tenant owed any rent.

Take the fifth paragraph of § 8A, for example, which the majority considers at length.  The fifth paragraph assumes that the landlord has sued the tenant for unpaid rent, and then provides various outcomes in the event that the tenant proves a defense that the landlord violated a relevant law.  The majority

highlights the following provision, which states that the tenant may retain possession: "if the amount found by the court to be due the landlord equals or is less than the amount found to be due the tenant or occupant by reason of any counterclaim or defense under this section." G. L. c. 239, § 8A, fifth par. However, the above quoted language has little relevance to a standard no-fault summary process action. In such actions, the landlord will not have sued for unpaid rent. Accordingly, in such an action the amount due to the landlord will be zero (unless there is a separate claim for unpaid rent or use or occupancy), and zero will <u>always</u> be at least "equal[]" to the amount due to the tenant "by reason of any counterclaim or defense," even if the amount due to the tenant is also zero. Leaving aside the valid points made by Justices Meade and Ditkoff regarding the lack of findings in this case, it seems to me that in a no-fault summary process action, we should not be concerning ourselves much with the fifth paragraph. Instead, the question is, are there any other provisions in § 8A that limit the efficacy of the tenant's defenses to possession?

That brings us to the knowledge/notice provision of the second paragraph. It states:

> "Whenever any counterclaim or claim of defense under this section is based on any allegation concerning the condition of the premises or the services or equipment provided therein, the tenant or occupant <u>shall not be entitled to relief under this section unless:</u> (1) the owner or his

agents, servants, or employees, or the person to whom the tenant or occupant customarily paid his rent knew of such conditions before the tenant or occupant was in arrears in his rent . . . " (emphasis added).

The above provision is an important component of the statutory scheme; a tenant or occupant "shall not be entitled to relief under this section unless" the owner or his agents "knew of such conditions before the tenant or occupant was in arrears in his rent."[2]  And the provision makes eminent sense; a tenant has a right to withhold rent and/or remain on the premises if the landlord is providing premises that violate the law, but the tenant must notify the landlord (or the landlord must know) of the violation first.  The object of the rule is to have the landlord remedy the condition or the services or equipment provided; the object is not (as the majority suggests) to give the tenant an "entitle[ment]" to possession.  The case law is in accord.  In Jablonski v. Casey, 64 Mass. App. Ct. 744 (2005), the tenant filed a § 8A counterclaim for breaches of the warranty of habitability.  This court explained that for a tenant to have a defense to possession under § 8A, "[t]he

---

[2] The violation alleged here, relating to charging the tenant for water, undoubtedly concerns the "condition of the premises or the services or equipment provided therein."  G. L. c. 239, § 8A, second par.  The water use statute, G. L. c. 186, § 22, includes the requirement that a property have water conservation devices before a landlord may charge a tenant for water, and the tenant's defense was that she was charged for water although no such equipment was installed.

landlord . . . must be notified of any [violative] condition before the tenant is allowed to withhold her rent."  Id. at 749. We accordingly held that that the tenant could not retain possession under § 8A because the landlord "did not have notice of the complained of conditions until . . . some two months into [the tenant's] rent arrearage and after she had received a notice to quit."  Id.[3]

The next question is, how does the second paragraph apply in the context of a no-fault summary process action?  In its footnote 12 and again in its final footnote, the majority adverts to the fact that the second paragraph states that the landlord must have knowledge "before the tenant or occupant was in arrears in his rent," and that in this case "the tenant . . . was never in arrears on her rent."  Put differently, the majority seems to be suggesting that because in no-fault summary process actions there is not necessarily an allegation that the tenant failed to pay rent, the second paragraph's knowledge/notice requirement does not apply in "no-fault"

---

[3] There is nothing to the contrary in Meikle v. Nurse, 474 Mass. 207 (2016).  While Meikle addressed a no-fault summary process action, the opinion dealt primarily with a threshold question of what defenses are available under the language of the first paragraph of § 8A.  Meikle does not mention or address the knowledge/notice requirement of paragraph two, perhaps because the defense asserted in Meikle (a security deposit violation) did not have to do with a condition of the premises or the services or equipment therein.

summary process cases, and thus is not a limitation on the tenant's ability to raise a § 8A defense to retain possession.

But that is not what the second paragraph says.  Under a plain reading of the second paragraph, if as here the tenant has raised a defense based upon "the services or equipment provided" to the premises, then the tenant "shall not be entitled to relief . . . unless" the landlord had knowledge of the claimed violation before the tenant was in arrears.  The defenses of § 8A are affirmative defenses (or counterclaims), on which the tenant has the burden of proof.  See Smith v. Hill, 232 Mass. 188, 191 (1919) (burden of proof on affirmative defense lies with "the parties alleging it").  The tenant thus had to show compliance with the second paragraph in order to get any relief. The majority's suggestion to the contrary is incorrect as a matter of plain language.

2.  The tenant did not prove knowledge or notice.  The tenant did not prove that the landlord had knowledge or notice in this case, and thus failed to establish a right to relief. There is no indication that the landlord knew that there was any issue with the provision of water to the premises, or any issue with the equipment for that service, or knew of any violation of G. L. c. 186, § 22.  Because no notice was given to the landlord, the landlord was not provided an opportunity to cure -- that is, "to remedy the condition[]," Boston Hous. Auth. v.

Hemingway, 363 Mass. 184, 201 (1973) -- prior to the defense being raised. The landlord sent a notice to quit, and the tenant did not raise the issue. Instead, the tenant first raised the issue after the summary process action had commenced. It is not consistent with the language of the statute, or the statutory scheme, to allow the tenant to retain possession under these circumstances.

A tenant might argue against the above plain language reading of the second paragraph of § 8A by noting that it could lead to a tenant in a no-fault case having no defense (because the tenant had never been in arrears), even where the tenant had provided notice and the offending condition had not been cured. But while that may be true, the fix is to read the requirements of the second paragraph to apply equally to no-fault and nonpayment summary process actions (thus requiring knowledge/notice before a defense can be viable); it is not to construe the second paragraph to impose no limitation in no-fault cases. The construction implied by the majority would be contrary to the Legislature's intent, and quite anomalous, as it would allow a tenant who has no possessory interest to remain in a property indefinitely -- by refusing to quit the premises, waiting until they are sued in a summary process action, and then raising as a defense or counterclaim any violation of law they can belatedly identify that relates to the property.

My colleagues have persuasively set forth why the judgment of possession in this case should be affirmed.  The failure of the tenant to establish knowledge/notice is yet another ground for doing so.  I respectfully dissent.